**CALN NETHER COMPANY, L.P., Appellant,**

v.

**BOARD OF SUPERVISORS OF THORNBURY TOWNSHIP, Chester County.**

Commonwealth Court of Pennsylvania.

Argued Nov. 3, 2003.

Decided Jan. 8, 2004.

486

Joseph G. Riper, Kennett Square, for appellant.

Ronald M. Agulnick, West Chester, for appellee.

BEFORE: LEADBETTER, Judge, and SIMPSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge SIMPSON.

In this land use appeal, Caln Nether Company, L.P. (Landowner) challenged the Thornbury Zoning Ordinance of 1983, as amended, (Ordinance) as exclusionary, alleging it failed to provide for "new and used car dealership" use. The Thornbury Township Board of Supervisors (Supervisors) rejected Landowner's challenge and proposed curative amendment, concluding the Ordinance permitted a car dealership in the Township's "B" Business District under the undefined "retail store" use classification. The Chester County Court of Common Pleas (trial court) affirmed. This appeal by Landowner followed.

Landowner is the equitable owner of a 5.89–acre lot in Thornbury Township (Subject Property).[1] The Subject Property lies in an A Agricultural and Residential (A–R) zoning district. Permitted uses in the A–R district include single-family dwellings, agriculture and several accessory uses. Section 155–10(A)–(C) of the Ordinance.[2]

1. The Subject Property is listed as two separate parcels on Chester County's tax map. Landowner's proposal seeks to develop it as a single parcel.

2. Churches, lodges and schools are permitted by special exception. Section 155–10(D) of the Ordinance.

3. The MPC is the Act of July 31, 1968, P.L. 805, as amended, 53 P.S. §§ 10101—11202. Section 609.1 of the MPC was added by the Act of June 1, 1972, P.L. 333, as amended, 53 P.S. § 10609.1. Pursuant to that Section:

The Subject Property, currently unimproved, is bordered by Green Tree Drive, a township road which serves as the entrance to Thornbury Estates residential development; Wilmington Pike (U.S. Route 202); an automobile dealership in a neighboring township; and residential properties. Landowner seeks to erect a new and used car dealership on the Subject Property.

Landowner filed a curative amendment challenge with the Township pursuant to Section 609.1(a) of the Pennsylvania Municipalities Planning Code (MPC),[3] asserting the Ordinance unlawfully excluded car dealership use; it proposed an amendment to cure the invalidity. The proposed amendment would create a "Highway Commercial" zoning district permitting "automobile dealership use" with no prohibition on outdoor storage or display of vehicles.

Landowner based its validity challenge on three grounds: (i) the use provisions in the Ordinance did not provide for a new and used car dealership; (ii) if prohibition on curbside display of merchandise rendered it impossible to conduct the proposed use; and (iii) if prohibition on outside storage had a *de facto* exclusionary effect on the use.

Following 18 hearings, the Supervisors, issued a 68–page opinion, which rejected

[a] landowner who desires to challenge on substantive grounds the validity of a zoning ordinance or map or any provision thereof, which prohibits or restricts the use or development of land in which he has an interest may submit a curative amendment to the governing body with a written request that his challenge and proposed amendment be heard and decided as provided in section 916.1.

53 P.S. § 10609.1(a).

Landowner's proposed amendment and denied relief. The Supervisors concluded car dealerships were not unlawfully excluded; rather, car dealership use fell within the Ordinance's undefined "retail store" category. *See* Section 155–35(1) of the Ordinance. Specifically, the Supervisors determined the principal function of a car dealership is the retail sale of automobiles, and a "store" is a "place where merchandise is offered for retail sale to consumers." Supervisors' Op. at 15–16. The Supervisors further noted the term "store" does not require the business be conducted entirely indoors.

The Supervisors rejected Landowner's arguments that business district limitations on front yard display of merchandise and outdoor storage of vehicles precluded car dealership use. The Supervisors determined some front yard display of vehicles is permitted, and there is no prohibition on parking vehicles outside so they may be viewed from the road. In addition, the Supervisors determined some outdoor storage of vehicles is permitted. As a result, the Supervisors rejected Landowner's claimed *de facto* exclusion. Landowner appealed to the trial court.

 Following the appeal, Landowner filed a motion requesting the trial court take additional evidence, which was denied. Thereafter, the trial court issued an order affirming the Supervisors' decision. Landowner appealed to this Court,[4] and

the trial court ordered Landowner to file a Concise Statement of Matters Complained of on Appeal pursuant to Pa. R.A.P. 1925(b). Landowner filed an eight-page 1925(b) Statement raising 23 issues.

Thereafter, the trial court issued a 1925(a) opinion, in which it criticized Landowner's 1925(b) Statement. The trial court recommended this Court consider quashing the appeal because Landowner's 1925(b) Statement was too lengthy and unfocused to permit the trial court to formulate an adequate response.

## I.

 Before reviewing the merits, we address the Supervisors' motion to dismiss this appeal. The Supervisors argue dismissal is warranted here because Landowner's prolix 1925(b) Statement violates Pa. R.A.P.1925(b) (requiring a "concise" statement of matters complained of). Pa. R.A.P.1925(b) states:

> **Direction to file statement of matters complained of.** The lower court forthwith may enter an order directing the appellant to file of record in the lower court and serve on the trial judge a concise statement of the matters complained of on the appeal no later than 14 days after entry of such order. A failure to comply with such direction may be considered by the appellate court as a

4. Although the parties dispute the appropriate standard/scope of review, where, as here, no additional evidence was presented after the Board's decision, our review is limited to determining whether the Board committed an abuse of discretion or an error of law. *Northampton Area Sch. Dist. v. E. Allen Township Bd. of Supervisors*, 824 A.2d 372 (Pa. Cmwlth.), *petition for allowance of appeal denied*, ___ Pa. ___, 834 A.2d 1144 (2003). "The capricious disregard standard of review," previously applicable where only the party with the burden of proof presented evidence and did not prevail before the administrative agency, is now "an appropriate component of appellate consideration in every case in which such question is properly brought before the court." *Leon E. Wintermyer, Inc. v. Workers' Comp. Appeal Bd. (Marlowe)*, 571 Pa. 189, 203, 812 A.2d 478, 487 (2002). Although Landowner now asserts the Supervisors capriciously disregarded evidence, it did not raise the issue in its 1925(b) Statement. Therefore, the issue is waived. *Commonwealth v. Lord*, 553 Pa. 415, 719 A.2d 306 (1998).

waiver of all objections to the order, ruling or other matter complained of.

Pa. R.A.P.1925(b). "Pa. R.A.P.1925 is intended to aid trial judges in identifying and focusing upon those issues which the parties plan to raise on appeal. Rule 1925 is thus a crucial component of the appellate process." *Commonwealth v. Lemon,* 804 A.2d 34, 36 (Pa.Super.2002) (citing *Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306 (1998)). Pursuant to this Rule, issues are considered waived where no 1925(b) statement was filed or when an issue was not included in a filed statement.[5]

■ Further, our courts acknowledge a concise statement that is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no statement at all. *Commonwealth v. Seibert,* 799 A.2d 54 (Pa.Super.2002). When a trial court has to "guess" what issues an appellant is appealing, that is not enough for meaningful review. *Commonwealth v. Dowling,* 778 A.2d 683 (Pa.Super.2001). Moreover, when an appellant fails to address the issues pursued on appeal in a concise manner, the trial court is clearly impeded in its preparation of legal analysis. *In re Estate of Daubert,* 757 A.2d 962 (Pa.Super.2000).

■ Landowner's decision to raise 23 issues in its 1925(b) Statement hindered the trial court in its preparation of legal analysis. Raising 22 issues before this Court is equally problematic.[6] The wisdom of the decision to address numerous issues, including those with obscure merit, is debatable; however, it does not serve as grounds for dismissal. Therefore, the Supervisors' motion to dismiss is denied.[7]

As to the merits, while Landowner's Brief raises an abundance of points, Landowner basically assigns five errors. It asserts: (i) the Supervisors erred in determining a car dealership is not *de jure* excluded on the basis it is permitted as a "retail store"; (ii) the Supervisors erred in failing to conclude the use is *de facto* excluded because of restrictions on outdoor storage and front yard display of vehicles; (iii) the Supervisors improperly excluded evidence; (iv) two Supervisors should have recused because they demonstrated bias; and (v) the trial court erred in denying its motion to take additional evidence.

■ Preliminarily, we note the Supervisors are the fact-finder here, with exclusive province over matters of credibility and weight to be afforded the evidence. *Heritage Bldg. Group, Inc. v. Bedminster Township Bd. of Supervisors,* 742 A.2d 708 (Pa.Cmwlth.1999). As such, the Supervi-

---

5. *See, e.g., Cheltenham Township Sch. Dist. v. Slawow,* 755 A.2d 45 (Pa.Cmwlth.2000).

6. Where an appellant raised 16 issues in its appellate brief, our Superior Court directed the appellant to the insights of the Honorable Ruggero J. Aldisert of the United States Court of Appeals for the Third Circuit, noting:

 Judge Aldisert has stated that, "When I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to any of them. I do not say that it is an irrebutable presumption, but it is a presumption that reduces the effectiveness of appellate advocacy."

*Kenis v. Perini Corp.,* 452 Pa.Super. 634, 682 A.2d 845, 848 n. 3 (1996) (quoting *United States v. Hart,* 693 F.2d 286, 287 n. 1 (3d Cir.1982)) (citation omitted).

7. In a second motion, the Supervisors move to suppress Applicant's reply brief alleging it fails to conform to Pa. R.A.P. 2113(a). Rule 2113(a) allows an appellant to file a brief in reply to matters raised in appellee's brief which were not previously raised in appellant's brief. Based on our review of the briefs submitted by the parties, we conclude Landowner's reply brief complies with Pa. R.A.P. 2113(a) because it replies to issues raised in the Supervisors' Brief.

sors may reject even uncontradicted testimony if they find it lacking credibility. *Id.* We will not engage in fact-finding or disturb the Supervisors' credibility determinations on appeal. *In re Brickstone Realty Corp.*, 789 A.2d 333 (Pa.Cmwlth.2001).

## II.

Landowner argues the Supervisors erred in failing to determine the Ordinance is invalid on the grounds car dealership use is *de jure* or *de facto* excluded throughout the Township.

Regarding the heavy burden associated with a validity challenge, our Supreme Court stated:

> Zoning ordinances are presumed constitutional. Anyone challenging the constitutionality of such an ordinance bears a heavy burden of proof. Uncertainties in the interpretation of an ordinance are to be resolved in favor of a construction which renders the ordinance constitutional. In addition, zoning ordinances are to be liberally construed to allow the broadest possible use of land.

*Upper Salford Township v. Collins*, 542 Pa. 608, 610, 669 A.2d 335, 336 (1995).

### A. *De Jure*

In a *de jure* challenge, the landowner alleges the ordinance totally excludes a proposed use. *H.R. Miller Co., Inc. v. Bd. of Supervisors of Lancaster Township*, 529 Pa. 478, 605 A.2d 321 (1992). The issue of whether a zoning ordinance is exclusionary is a question of law, reviewable by this Court. *Cracas v. Bd. of Supervisors of W. Pikeland Township*, 89 Pa.Cmwlth. 424, 492 A.2d 798 (1985). Here, Landowner alleged the Ordinance totally excludes car dealership use. The Supervisors determined car dealership use falls within the undefined "retail store" use category. Landowner contends the

Supervisors erred in determining a car dealership falls within this category.

The fact that a zoning ordinance does not contain a specific provision addressing a proposed use is not, in and of itself, a basis for finding an unconstitutional exclusion of that use. *Kratzer v. Bd. of Supervisors of Fermanagh Township*, 148 Pa.Cmwlth. 454, 611 A.2d 809 (1992). Where an ordinance does not mention a specific use, we must determine whether the proposed use is included within another use specifically provided for. *Id.* When a proposed use can be considered within another zoning classification or, where a zoning ordinance is broad enough to encompass the proposed use, there is no *de jure* exclusion. *Id.*

The issue of whether a proposed use falls within a given category of permitted use in a zoning ordinance is a question of law, subject to this Court's review. *H.E. Rohrer, Inc. v. Zoning Hearing Bd. of Jackson Township*, 808 A.2d 1014 (Pa.Cmwlth.2002). In considering this issue, we are mindful that ordinances are to be construed expansively, affording the landowner the broadest possible use and enjoyment of its land. *Id.* Undefined terms are given their plain meaning, and any doubt is resolved in favor of the landowner and the least restrictive use of the land. *Kissell v. Ferguson Township Zoning Hearing Bd.*, 729 A.2d 194 (Pa.Cmwlth.1999). To define an undefined term, we may consult definitions in statutes, regulations or the dictionary for assistance. *Manor Healthcare v. Lower Moreland Township Zoning Hearing Bd.*, 139 Pa.Cmwlth. 206, 590 A.2d 65 (1991). In addition, a board of supervisors is entitled to considerable deference in interpreting its zoning ordinance. *Montgomery Crossing Assocs. v. Township of Lower Gwynedd*, 758 A.2d 285 (Pa. Cmwlth.2000).

In order to determine the usual and ordinary meaning of the term "retail store," the Supervisors consulted several sources, including dictionaries. Based on a review of these sources, the Supervisors determined car dealership use falls within the undefined retail store category. The trial court agreed, stating:

> The [Ordinance] permits "Retail Store." [The Supervisors] concluded that the principal function of a car dealership is the sale of automobiles at retail and that a "Retail Store" is where one sells merchandise at retail, whatever that merchandise might be. We need not even grant [Supervisors] the deference to which [they are] entitled in the interpretation of [their] [Ordinance] to find those conclusions are supported by the evidence and by common sense.

Trial Court Slip Op. at 3 (footnotes omitted).

■■■ We agree with the Supervisors and the trial court that a car dealership falls within the plain meaning of the term "retail store ." Specifically, Black's Law Dictionary defines "retail" as "[t]he sale of goods or commodities to ultimate consumers, as opposed to the sale for further distribution or processing." Black's Law Dictionary 1317 (7th ed.1999). It defines the term "store" as "a place where goods are deposited to be purchased or sold." *Id.* at 1432. In addition, Webster's Tenth New Collegiate Dictionary defines "retail" as "the sale of commodities or goods in small quantities to ultimate consumers." Webster's New Collegiate Dictionary 996 (10th ed.2001). It defines store as "a business establishment where usu[ally] diversified goods are kept for retail sale." *Id.* at 1156.

Based on a review of the plain meaning of the term, we are convinced the Supervisors properly construed the Ordinance. Moreover, because Landowner's interpretation would invalidate the Ordinance, we adopt the Supervisors' interpretation and hold, under the Ordinance, a car dealership is permitted by right in the business district as a "retail store." Consequently, Landowner did not meet its heavy burden of proving the Ordinance is unlawfully exclusionary.

*Cracas*, relied on by Landowner, does not compel a different result. There, landowners who conducted a variety of home occupations, i.e., general contracting, landscaping, paving, retail/wholesale sale of eggs, and janitorial services, challenged a zoning ordinance on the ground it did not provide for these commercial uses. The board rejected the challenge, concluding the ordinance permitted the uses. We disagreed, noting the proposed uses, all of which required outdoor storage, did not fall within any of the permitted use categories in the business district.[8] We also noted the applicable regulations prohibited permanent outdoor storage of merchandise, articles or equipment. Ultimately, we held none of the uses sought by the landowners' relief requests were permitted. Therefore, we determined the zoning ordinance was facially exclusionary.

Here, unlike in *Cracas*, the proposed car dealership falls within the plain meaning of the undefined term "retail store." Moreover, unlike in *Cracas*, the business district regulations do not prohibit parking, which is the primary outdoor activity Landowner seeks to conduct in connection with its proposed car dealership use.[9]

---

8. Those uses included retail store with floor area less than 1,000 sq. ft., professional office, retail service shop, personal service shop, hotel or restaurant.

9. Likewise, *Cook v. Zoning Hearing Bd. of Ridley Township*, 47 Pa.Cmwlth. 160, 408 A.2d 1157 (1979), relied on by Landowner, is not supportive. There, landowners sought to

### B. *De Facto*

Alternatively, Landowner contends the Ordinance is *de facto* exclusionary because of its prohibitions on outside storage and front yard display of vehicles.

 "*De facto* exclusion of a legitimate use is established where an ordinance appears to permit the use but imposes unreasonable restrictions which, when applied, effectively prohibit the use throughout the municipality." *Borough of Edgewood v. Lamanti's Pizzeria,* 124 Pa.Cmwlth. 325, 556 A.2d 22, 24 (1989) (citations omitted).

### 1. *Outdoor Storage*

 Landowner contends, because outdoor storage is a necessary component of a car dealership, and because such storage is prohibited in the business district, this prohibition effectively excludes the use.

The applicable Ordinance provision is Section 155–37(D), which states:

> *No permanent storage of merchandise,* articles or equipment shall be permitted outside a building *and no goods,* articles or equipment shall be stored, displayed or offered for sale *beyond the front lines of a building. ...*

Section 155–37(D) of the Ordinance (emphasis added). As noted by the Supervisors, the only outside storage or activity associated with the proposed use is the outside location of vehicles. The Supervisors determined this Section does not bar

operate an open-air used car lot in a district permitting "[a]ny retail business whose principal activity is the sale of new merchandise in an enclosed building including ... Automobile sales, boat sales, motorcycle sales...." *Id.* at 1158. The ordinance permitted uses "of the same general character" as those listed above. The issue before us was whether an open air used car lot was "of the same general character" as a retail business conducted in an enclosed building. We held it was not.

vehicle placement as contemplated by the proposed car dealership. Rather, they determined the activity was more accurately described as parking of vehicles than permanent storage of merchandise. Supervisors' Op. at 35. The Supervisors determined "parking" is specifically permitted in the business district. *See* Section 155–35(A)(9) of the Ordinance (permitting parking as an accessory use). We find the Supervisors' determination reasonable. Thus, we conclude the permanent outdoor merchandise storage limitation does not effectively prohibit car dealership use.

### 2. *Vehicle Display*

 Landowner also argues application of Section 155–36(C) of the Ordinance effectively prohibits car dealership use because it restricts front yard display of vehicle inventory.

Section 155–36(C) of the Ordinance states:

> Front yard. There shall be a setback from the street toward which the principal entrance is oriented which shall not be less than 35 feet in depth and within *no* other buildings, gasoline pumps or · *outdoor displays shall exist.*

Section 155–36(C) of the Ordinance (emphasis added).[10] Before the Supervisors, Landowner asserted front yard display of vehicles was a necessary attribute of car dealership use.

Here, the Ordinance is silent as to the meaning of "retail store."

10. The Ordinance defines "front yard" as "a yard extending the full width of the lot along the front line and extending in depth from the lot line to the nearest point of the permitted principal or accessory buildings or buildings on the lot...." Section 155–4 of the Ordinance. The Ordinance further provides, in the case of a corner lot, a second front yard of the same depth shall be required. Section 155–36(C) of the Ordinance.

The Supervisors rejected the testimony by Landowner's witnesses that front yard display of vehicles was vital for car dealership use. Supervisors' Op. at 26–8. Moreover, the Supervisors rejected Landowner's assertions that the 35–foot setback requirement effectively prohibited a car dealership. *Id.* The trial court agreed, stating:

> [Landowner] further contends and complains that even if selling cars at retail is permitted (and, we think, [Landowner] essentially acknowledges *sub silento* that a car dealership's principal activity is to sell cars at retail, *i.e.,* a retail store) nevertheless a car dealership is still excluded because [Landowner's] proposed dealership cannot function without "all of its component activities, attributes and requirements." Again, we find this contention to be without merit. In the first place, even if car dealerships are a constitutionally protected activity, there is not an equal constitutional right to operate the dealership only in exactly one particular manner. [Landowner] presented testimony about specific requirements without which a car dealership cannot function as well as testimony interpreting the [Ordinance]. [Landowner] argued on appeal to this court and apparently continues to argue as if that testimony were binding on [the Supervisors] and this court. Obviously it is not. To the extent that [the Supervisors] rejected the testimony as not credible, it was entitled to do so, particularly testimony that a car dealership cannot operate without a certain attribute in the face of evidence that many car dealerships actually do so. Nor did [the Supervisors] err in rejecting the testimony con-

cerning the meaning of the [Ordinance]. [The Supervisors] are in a better position that any witness to determine the meaning of the [Ordinance]....

Trial Court Slip Op. at 4–5 (footnote omitted). We agree. The Supervisors did not commit error in finding that a car dealership can exist without front yard display. As a result, there is no error evident in their conclusion that the front yard display restriction effectively prevents car dealerships.

Taken as a whole, regulations applicable in the business district do not preclude car dealership use. Although certain limitations may inhibit the precise manner in which Landowner seeks to operate, these limitations do not create a *de facto* exclusion.[11]

### III.

Landowner next asserts the Supervisors erred in excluding: (i) minutes of a 1986 supervisors' meeting at which one supervisor opined car dealership use was not permitted in the business district; (ii) a settlement agreement between the Township and another landowner recognizing a prohibition on outdoor storage and display of vehicles in the business district; (iii) a planning committee memo proposing the addition of "retail use" and "auto dealership use" categories in the business district; and (iv) testimony and evidence related to the Township's "historically anti-commercial policies." Landowner argues the Supervisors deprived it of its right to due process by excluding these items.

Pursuant to Section 908 of the MPC, 53 P.S. § 10908:

---

**11.** Because we agree there is no *de jure* or *de facto* exclusion of car dealerships in the Township, we need not address Landowner's arguments that it is entitled to site specific relief.

The board shall conduct hearings and make decisions in accordance with the following requirements:

\* \* \* \* \* \*

(6) Formal rules of evidence shall not apply, but *irrelevant, immaterial, or unduly repetitious evidence may be excluded.*

53 P.S. § 10908(6) (emphasis added). Based on our review of the proffered evidence, we agree with the Supervisors that such evidence was irrelevant and, therefore, properly excluded.

### A.

■ First, regarding the minutes of the 1986 supervisors meeting, one supervisor "said definitively that [a car dealership] is not permitted at the ["Ginter subdivision."]" R.R. at 314a. There is no indication, however, of the zoning district in which the "Ginter subdivision" lies. Therefore, this evidence is irrelevant.

### B.

■ Pursuant to the excluded settlement agreement, the Township and another landowner agreed to rezone a lot from A–R to business use to allow continued use of the property as an RV dealership. R.R. at 318a–322a. The agreement permitted the landowner to continue parking and storing recreational vehicles including travel trailers, motor homes and boats on its property. *Id.* The agreement refers to provisions of a zoning ordinance which restrict parking and storage, but those provisions do not correspond to any provisions in the existing Ordinance. R.R. 321a–22a. As a result, the settlement agreement does not tend to prove the existing Ordinance excludes car dealership use or restricts parking and storage of vehicles associated with that use.

### C.

■ Regarding the planning committee memo, the document indicates the Township proposed to create "retail use" and "automobile dealership use" categories after the conclusion of Landowner's curative amendment challenge. We believe the exclusion of this evidence was proper. In fact, exclusion of this evidence is analogous to exclusion of evidence of post-accident repairs. *Cf. Robinson v. City of Phila.,* 329 Pa.Super. 139, 478 A.2d 1 (1984) (evidence of post-accident repairs is inadmissible to prove negligence); *Burke v. Buck Hotel, Inc.,* 742 A.2d 239 (Pa.Cmwlth.1999) (evidence of remedial repairs not admissible as proof of negligence). Further, this evidence is clearly irrelevant because the issue before the Supervisors was limited to whether the existing Ordinance was exclusionary.

### D.

■ As to the testimony and exhibits which purportedly show the Township engages in "anti-commercial" policies, Landowner argues this evidence confirms the Township would employ a narrow interpretation of the term "retail store" outside the context of a constitutional challenge. It was offered as foundation for the argument that any doubt in construing this undefined term should be resolved in its favor. Because we agree with the Township that a car dealership falls within the plain meaning of the term "retail store," we discern no error from the exclusion of this evidence.

In sum, Landowner proffered the above evidence to bolster its argument that the Township unlawfully excluded car dealerships. Over the course of 18 hearings, Landowner was afforded a full opportunity to be heard. Because the relevance of the excluded evidence is uncertain, we discern *no error from the Supervisors' decision to*

exclude it. 53 P.S. § 10908(6). *See also* Pa. R.E. 403 (exclusion of relevant evidence based on prejudice, confusion, or waste of time).

## IV.

 Landowner also asserts Supervisors Giacinto and Eichman should recuse because they reside in a residential development close to the Subject Property. It further contends bias existed because Supervisor Giacinto is a member of a civic organization granted party status at the hearings before the Supervisors, and because Supervisor Eichman expressed concern over the proposal's impact on property values.

 As a general rule, a municipal officer should disqualify himself from any proceeding in which he has a personal or pecuniary interest that is immediate or direct. *Amerikohl Min. Inc. v. Zoning Hearing Bd. of Wharton Township*, 142 Pa.Cmwlth. 249, 597 A.2d 219 (1991). This Court recently reiterated the standards used to analyze a claim of bias:

> The Court recognizes that due process requires a local governing body in the performance of its quasi-judicial functions to avoid even the appearance of bias or impropriety. A showing of actual bias is unnecessary in order to assert a cognizable due process claim; the mere potential for bias or the appearance of non-objectivity may be sufficient to constitute a violation of that right.

*Kuszyk v. Zoning Hearing Bd. of Amity Township*, 834 A.2d 661 (Pa.Cmwlth.2003).

 While an appearance of non-objectivity is sufficient to trigger judicial scrutiny, the significant remedy of invalidation often depends on something more tangible. "Before it can be said that a judge [or supervisor] should have recused himself the record must demonstrate bias, prejudice, capricious disbelief or prejudgment. . . . If a judge [or supervisor] thinks he is capable of hearing a case fairly his decision not to withdraw will ordinarily be upheld on appeal." *Appeal of Miller & Son Paving, Inc.*, 161 Pa.Cmwlth. 138, 636 A.2d 274, 278 (1993) (quoting *In re Blystone*, 144 Pa.Cmwlth. 27, 600 A.2d 672, 674 (1991)).

At the outset of the hearings, Landowner questioned each Supervisor concerning any alleged bias. In their opinion, the Supervisors rejected Landowner's assertions that this questioning revealed either bias or the appearance thereof, stating:

1. Geographically, Thornbury Township, Chester County, is the smallest Township in the Commonwealth of Pennsylvania. Because the Township has, until fairly recently, been lightly populated, most of the residents are acquainted with each other.

2. Thornbury Estates is a subdivision of approximately 104 detached single family dwellings. . . . .

3. Members of the development have organized the Thornbury Estates Civic Association. All of its members are residents or owners of homes in Thornbury Estates, but not all residents or owners of lots in the development. In particular, although Robert Eichman's daughter is a dues-paying member of the Association, Mr. Eichman is not a member and never has been.

4. Mr. Eichman has stated that at the inception of the hearing he had no preordained views with respect to [Lanodwner's] Application, and could hear the matter with an open mind and fairly judge the matter before the [Supervisors]. During the entire hearing, Mr. Eichman never showed any indication of bias or prejudice against [Landowner] and at all times conducted himself in a fair, impartial, judicious and respectful

manner. There is absolutely nothing in the record to justify a finding that he would be less than a fair and impartial judge in this proceeding and the [Supervisors find] no facts that would justify his challenge, let alone his removal or disqualification.

5. In like manner, Mr. Giacinto lives at the far end of the development and the impact of the proposal would be of minimal effect on him and his property.... Accordingly, the [Supervisors discredit] the allegations of bias and find[] both members fully qualified to sit in judgment of this proceeding. The mere fact that two [Supervisors] live in the development adjacent to the lands of the [Landowner] does not disqualify them from hearing this matter or rendering a decision thereon. Proximity to the project does not have an effect of preclusion of a public official from properly performing his duties.

6. [T]he [Thornbury Estates Civic Association's] endeavors consist primarily of activities such as a few neighborhood street parties over the years and the funding of entrance lights to the development.

7. Aside from the bald allegations of prejudice, [Landowner] has not produced one scintilla of evidence to justify the allegations of bias, and the [Supervisors find] none to exist. These allegations are even less persuasive when we consider that during the course of the hearings, counsel for [Landowner] leveled the same charges against the remaining [Supervisors], the Township Solicitor and the Township Engineer. In each instance there was no basis in fact shown by [Landowner] to support such charges....

8. In short, the [Supervisors] [find] no bias or prejudice on the part of any of its constituency nor any credible evidence to support such charges.

9. It is also apparent that [Landowner] knew from the inception of the hearings that two of the [Supervisors] lived in Thornbury Estates. It could have brought the challenge before the Zoning Hearing Board, but elected instead to proceed before the [Supervisors]. It selected this venue with full knowledge that the only relevant fact proven upon which it bas[e]s the allegation of bias, but with full knowledge of those operative facts selected the [Supervisors] as its venue to hear the challenge. While this does not disqualify [Landowner] of it[s][r]ight to a fair and impartial tribunal, these tactics certainly weigh upon the issue of good faith with which the charges of bias are levied.

Supervisors' Op. at 5–6.

These findings are supported by substantial evidence. R.R. at 13a 14a. After examining each Supervisor regarding potential bias, Applicant failed to produce evidence to show the Supervisors exhibited bias in their conduct as Supervisors during the hearings in this matter. We, therefore, agree with the Supervisors that Landowner did not establish grounds for disqualification. *See, e.g., Amerikohl Min. Inc.* (zoning board members not disqualified merely because residence of one board member and residence of another board member's parents-in-law were located sufficiently close to proposed project).[12]

---

**12.** Landowner also argues the Chairperson of the Supervisors demonstrated bias because she read a "determination letter" authored by the Township zoning officer that imposed strict tree removal limitations on the proposed development of the Subject Property. Because the Chairperson merely read the letter into the record, we fail to see how this warranted recusal.

## V.

Finally, Landowner maintains the trial court erred in refusing to hear additional evidence relating to Ordinance changes enacted to cure the defects asserted in Landowner's curative amendment challenge. Specifically, Landowner argues, after the conclusion of the hearings, the Supervisors adopted an amendment creating a "multipurpose" zoning district containing a "catch-all" use category.

The question of whether presentation of additional evidence is to be permitted is a matter within the sound discretion of the trial court. *E. Consol. & Dist. Servs., Inc. v. Bd. of Comm'rs of Hampden Township,* 701 A.2d 621 (Pa. Cmwlth.1997). Section 1005-A of the MPC, 53 P.S. § 11005-A,[13] states a trial court may receive additional evidence if the moving party shows "that proper consideration of the land use appeal requires the presentation of additional evidence." 53 P.S. § 11005-A. "A [trial court] faces compulsion to hear additional evidence in a zoning case only where the party seeking the hearing demonstrates that the record is incomplete because the party was denied an opportunity to be heard fully, or because relevant testimony was offered and excluded." *E. Consol. & Dist. Servs.,* 701 A.2d at 624.

We reiterate our view that evidence of these later-enacted changes is not admissible in attempting to prove the Ordinance was exclusionary when Landowner brought its challenge. Pa. R.E. 403 (exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time). Thus, we discern no abuse of discretion from the trial court's denial of Landowner's request to hear additional evidence.

Based on the foregoing, we affirm.

## ORDER

AND NOW, this 8th day of January, 2004, the order of the Court of Common Pleas of Chester County is AFFIRMED.

---

**13.** Section 1005-A of the MPC was added by the Act of December 21, 1988, P.L. 1329.