IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Appeal of Federation Housing, : 
Inc. from the February 14, 2024 : 
Decision of the Board of Supervisors : 
of Lower Southampton Township : 
                                : No. 1307 C.D. 2024
Appeal of: Federation Housing, Inc. : Submitted: December 8, 2025

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE STACY WALLACE, Judge
                  HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WALLACE                              FILED:  January 9, 2026

Federation Housing, Inc. (Applicant) appeals from the September 6, 2024 order of the Court of Common Pleas of Bucks County (Common Pleas) denying Applicant's appeal of the decision of the Lower Southampton Township (Township) Board of Supervisors (Board) to deny Applicant's Conditional Use Application (Application). Upon careful review, we affirm.

## I.     Background

Applicant is the equitable owner[1] of property located at 1834 Brownsville Road, Feasterville-Trevose, Pennsylvania (Property).   Reproduced Record

---

[1]  The owner of record is Triple Net Investments LXI, LLC. Reproduced Record (R.R.) at 27a, 180a. Applicant entered into an Agreement of Sale to purchase the Property from Triple Net Investments LXI, LLC, which was conditioned on the Township's approval of Applicant's conditional use application and subsequent land development plan. *Id.*

(R.R.) at 28a. The Property is approximately 1.77 acres in size and is located in the Township's Town Center Zoning District (TC District) under the Township's Zoning Ordinance[2] (Ordinance). On November 8, 2023, Applicant submitted a Conditional Use Application (the Application)[3] to the Township to construct a three-story apartment building on the Property with 52 reduced-rent apartment units for seniors age 62 and above. *Id.* at 27a-29a, 39a-40a, 226a-31a.

To properly frame Applicant's burden in obtaining conditional use approval from the Board, we begin with the Ordinance's relevant provisions. Section 2207(3) of the Ordinance establishes "general requirements and standards" which all conditional uses in the Township must satisfy, as follows:

> The Board shall grant a conditional use only if it finds adequate evidence that any proposed use submitted for a conditional use will meet all of the following general requirements as well as any specific requirements and standards listed for the proposed use. The Board shall[,] among other things[,] require that any proposed use and location be:
>
> A. In accordance with the Lower Southampton Township Comprehensive Plan and consistent with the spirit, purpose and intent of this chapter.
>
> B. In the best interest of the Township, the convenience of the community, the public welfare and be a substantial improvement to property in the immediate vicinity.

---

[2] Township of Lower Southampton, Pa., Zoning Code (2008), *as amended*.

[3] Applicant attempted to have the Board consider the Application as an Amended Conditional Use Application, because the Township granted conditional use approval to a previous equitable owner of the Property for construction of a similar apartment building in 2020. *See* R.R. at 28a. The Board, however, disregarded the previous conditional use approval because the previous equitable owner did not comply with its terms or pursue the development. *See id.* at 180a-85a, 193a. Thus, the Board treated the Application as a stand-alone application for a conditional use. *Id.*

2

C. Suitable for the property in question and designed, constructed, operated and maintained so as to be in harmony with and appropriate in appearance with the existing or intended character of the general vicinity.

D. Suitable in terms of effects on street traffic and safety, with adequate access arrangements to protect major streets from undue congestion and hazard.

Ordinance § 2207(3).

Section 27-1301 of the Ordinance sets forth the purpose and intent of the TC District, which is, principally, to "[e]ncourage economic development through the establishment of flexible standards that maintain a traditional 'Main Street' environment and the community's unique identity." Ordinance § 27-1301(A). Section 27-1302(2)(A) of the Ordinance sets forth the specific requirements and standards an apartment building must meet to qualify as a conditional use in the TC District, as follows:

(1) Twenty percent of the first floor of the building located along the street frontage shall be office or retail uses.

(2) Apartment buildings should follow the standards of [Sections] 27-1303 and 1306 [of the Ordinance[4]].

Ordinance § 27-1302(2)(A).

To determine if Applicant could establish its entitlement to a conditional use, the Board conducted a public hearing on December 13, 2023, and January 24, 2024, pursuant to Sections 909.1(b)(3) and 908 of the Pennsylvania Municipalities Planning Code (MPC),[5] 53 P.S. §§ 10909.1(b)(3),[6] 10908. *See* R.R. at 187a-282a.

---

[4]   Due to our disposition, the requirements of Sections 27-1303 and 1306 of the Ordinance are not relevant to our analysis.

[5]   Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

[6]   Added by the Act of Dec. 21, 1988, P.L. 1329.

With regard to the specific requirement that 20% of the first floor of the building would be office or retail uses,[7] Justin Geonotti (Geonotti), the engineer who prepared Applicant's building plans, testified first. Geonotti stated "there is going to be an accessory business office for the apartment use which is going to be located along Brownsville Road and along what is called the eastern corner of the building." *Id.* at 198a-99a, 209a. Geonotti further asserted the Applicant was "providing an office that is 20% of [the street] frontage of the building," and Applicant's understanding was that this office use would "meet the criteria in the Ordinance." *Id.* at 237a-38a. One of the Board members then noted:

> Typically the [TC District] was designed for the community to walk down the street and be able to go into a store and not -- I know that there is apartments already on Brownsville [Road] above the smoke shop and there is another small strip there with a whole bunch of businesses with apartments in the back.
>
> . . . .
>
> [S]omebody from the community can't walk down the street and just go shopping. This is private, right, your office pertains to just your people that live in the building.

R.R. at 237a-38a.

Thereafter, Applicant's counsel stated "[if] that turns out to be an issue with [the Board,] we can reconsider that and identify another user, but **we don't have another particular retail or office use contemplated today for that space.**" *Id.* at 238a (emphasis added). Applicant's counsel also added "[w]e allocated the space that your Ordinance requires for that use and we intend to comply." *Id.*

---

[7]  Due to our disposition of this appeal, we need not provide an in-depth summary of the testimony presented before the Board.

4

Numerous community members and representatives of the local fire departments (Objectors) testified in opposition to Applicant's development. *See* R.R. at 249a-98a. The Township's solicitor conceded that although Objectors were permitted to testify, "many of the[ issues they raised] ha[d] nothing to do with the conditional use." *Id.* at 320a. Nevertheless, Applicant's witnesses responded to Objectors' comments. *See id.* at 249a-320a. Relevant to the conditional use, Applicant's Executive Director (Executive Director) explained:

> Initially we would use [the storefront office space] as . . . space to meet with new applicants, new residents, as they come in and go through our eligibility process. That is an interview, going over financial documents, background checks, all those good things.
>
> Once the building is fully occupied and operational we would look to an appropriate use for the facility. [We would] . . . love to see something like a beauty salon or something that is age appropriate [for an elderly population], and we would welcome any opportunity to have retail space on the ground floor that would support the residents who reside there.

R.R. at 321a-22a. Executive Director also agreed with Applicant's counsel's comment that "we are very open to doing something other than a leasing office once the building is leased up." *Id.* at 323a. When asked whether these potential future uses would be open to the public, Executive Director responded "[w]e **would entertain it** being open to the public." *Id.* (emphasis added).

On February 14, 2024, after receiving the witnesses' testimony and evidence, the Board rendered a written decision denying the Application. In its decision, the Board determined Applicant "failed to meet its burden of proof that the [Application] meets the specific standards and criteria in the [O]rdinance[,] and in particular Section 27-1302(2)([A])(1)." R.R. at 183a-85a. The Board also determined the Application failed to meet the general conditional use requirements and standards in

5

Section 27-2207 of the Ordinance and the TC District's purpose and intent requirements in Section 27-1301 of the Ordinance. R.R. at 182a-83a. In addition, the Board determined "Objectors met their burden of proof that the proposed conditional use is detrimental to public health, safety, and general welfare." *Id.* at 183a.

Applicant appealed the Board's decision to Common Pleas. Common Pleas did not accept new evidence and decided Applicant's appeal based on the record the parties made before the Board. *See* Common Pleas' Op., 11/12/24, at 1-2. Ultimately, Common Pleas denied Applicant's appeal. *Id.* at 10. Applicant timely appealed to this Court.

## II.    Issues

On appeal, Applicant raises three issues for this Court's review. First, Applicant asserts the Board abused its discretion or committed an error of law in determining Applicant did not satisfy its burden of establishing it met the requirements for an apartment building conditional use in the TC District. Second, Applicant asserts the Board abused its discretion or committed an error of law in determining Objectors satisfied their burden of establishing Applicant's proposed conditional use posed a substantial risk to the public's health, safety, and welfare. Finally, Applicant asserts the Board abused its discretion or committed an error of law by considering conditional use factors that are not listed in the Ordinance.

## III.    Analysis

Because "Common Pleas did not take additional evidence in this zoning appeal," this Court's role "is limited to reviewing the [Board]'s decision, not that of Common Pleas." *Dowds v. Zoning Bd. of Adjustment*, 242 A.3d 683, 695 (Pa. Cmwlth. 2020) (citation omitted). Our "standard of review of a municipality's

6

denial of a conditional use application . . . is limited to determining whether the municipality abused its discretion, or committed an error of law." *EQT Prod. Co. v. Borough of Jefferson Hills*, 208 A.3d 1010, 1024 (Pa. 2019) (citation omitted). We will find an abuse of discretion "whenever the findings of the governing body are not supported by substantial evidence." *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gorsline v. Bd. of Supervisors of Fairfield Twp.*, 186 A.3d 375, 385 (Pa. 2018). To determine whether the governing body committed an error of law, which includes issues of statutory construction, "our standard of review is *de novo* and our scope of review is plenary." *Id.* "In other words, we do not defer to the [Board's] conclusions of law, and we reassess the record with a fresh pair of eyes." *Allegheny Cnty. Dep't of Health v. Wilkerson*, 329 A.3d 111, 117 (Pa. Cmwlth. 2024).

A conditional use is a use that is "specifically recognized by the [municipality] as consistent with the zoning plan." *Aldridge v. Jackson Twp.*, 983 A.2d 247, 253 (Pa. Cmwlth. 2009) (citation omitted). "As such, it is presumed the particular type of use does not, of itself, adversely affect [the] public interest." *Id.* A conditional use application is reviewed by the "municipal governing body rather than the zoning hearing board." *In re Thompson*, 896 A.2d 659, 670 (Pa. Cmwlth. 2006) (citation omitted).

The municipality's zoning ordinance provides the criteria which the municipality's governing body must consider in reviewing a conditional use application. *Id.* Although each municipality's zoning ordinance is unique, zoning ordinances typically provide specific, objective criteria and general, subjective criteria for conditional uses. *See Williams Holding Grp., LLC v. Bd. of Supervisors of West Hanover Twp.*, 101 A.3d 1202, 1212-13 (Pa. Cmwlth. 2014) (citations

7

omitted). The applicant bears the initial burden of demonstrating its proposed use meets the zoning ordinance's specific, objective criteria. *Id.* at 1212. "Once the applicant [carries this burden], he has made out his prima facie case and the application must be granted unless the objectors present sufficient evidence that the proposed use has a detrimental effect on the public health, safety, and welfare." *In re Thompson*, 896 A.2d at 670 (citation omitted). Whether a proposed use has a detrimental effect on the public health, safety, and welfare is a general, subjective criterion. *Williams*, 101 A.3d at 1213.

A conditional use criterion that is "nonobjective or too vague to afford the applicant knowledge of the means by which to comply . . . is either one that is not enforceable . . . or, if it relates to public detriment, the burden shifts to [the] objector[s], who must demonstrate that the applicant's proposed use would constitute such detriment." *Id.* This Court has explained this shifting burden of persuasion is necessary because "it would be manifestly unfair to require [an applicant] to prove conformity with a policy statement, the precise meaning of which is supposed to be reflected in [s]pecific requirements." *Bray v. Zoning Bd. of Adjustment*, 410 A.2d 909, 911 (Pa. Cmwlth. 1980) (citation omitted).

Applicant's first issue on appeal is whether the Board erred in determining Applicant failed to carry its burden of proof for a conditional use. We note the Board only determined Applicant failed to establish one[8] of the Ordinance's specific, objective criteria for a conditional use: that "[t]wenty percent of the first floor of the

---

[8] Common Pleas determined the Applicant failed to carry its burden of persuasion regarding several of the Ordinance's other specific, objective criteria. *See* Common Pleas' Op., 11/12/24, at 6-9. In doing so, Common Pleas exceeded its standard of review, which is limited to reviewing the Board's decision in the same manner in which we review the Board's decision. Accordingly, we disregard Common Pleas extraneous conclusions and restrict our review, as we must, to the Board's decision. *See Dowds*, 242 A.3d at 695.

8

[proposed] building located along the street frontage [must] be office or retail uses." *See* Ordinance § 27-1302(2)(A)(1). Accordingly, we limit our review to this issue.

Preliminarily, we note that, despite Applicant's attempts to explain what it may do in the future,[9] the Application attempted to satisfy the TC District's first-floor office or retail use requirement by placing the apartment building's leasing office on the first floor along the street frontage. *See* R.R. at 238a (Applicant's counsel conceded "we don't have another particular retail or office use contemplated today for that space"). Thus, the issue before the Board, and accordingly the issue before this Court, is whether the leasing office for Applicant's apartment building qualifies as "office or retail uses" under Section 27-1302(2)(A) of the Ordinance.

In considering the proper interpretation of a zoning ordinance, "we are mindful that ordinances are to be construed expansively, affording the landowner the broadest possible use and enjoyment of its land." *Caln Nether Co., L.P. v. Bd. of Supervisors of Thornbury Twp.*, 840 A.2d 484, 491 (Pa. Cmwlth. 2004) (citation omitted). Nevertheless, "a board of supervisors is entitled to considerable deference in interpreting its zoning ordinance." *Id.*

While the Ordinance does not expressly define "office or retail uses," the plain language of the Ordinance reflects that an apartment building use is a separate use from an office or retail use. Specifically, Section 27-1302(2)(A) of the Ordinance makes an apartment building a conditional use. However, to qualify for approval of this conditional use, an apartment building must include 20% of the first floor street frontage as "office or retail uses." *See* Ordinance § 27-1302(2)(A)(1). By setting

---

[9] We note that Applicant's statements were, at best, noncommittal. *See* R.R. at 323a (Executive Director stated Applicant was "very open to doing something other than a leasing office once the building is leased up," and Applicant "would entertain it being open to the public").

9

aside "office or retail uses" from an "apartment building" as a conditional use, the Ordinance treats the three as separate uses.

The Board members' comments at the Board's conditional use hearing show the Board interpreted the Ordinance to require the uses to be separate. Specifically, the Board noted the TC District was intended to operate as a "traditional 'Main Street' environment," and expressed concerns that Applicant's proposed use would not offer any traditional main street opportunities to the public, but would instead be restricted to the private use of Applicant's residents. These concerns ultimately led the Board to determine the Application did not set forth a separate office or retail use for any of the first floor of its proposed apartment building, in violation of Section 27-1302(2)(A)(1) of the Ordinance.

Having noted the Board's interpretation of Section 27-1302(2)(A)(1) of the Ordinance, as requiring a separate office or retail use, aligns with the Ordinance's plain language, we defer to the Board's interpretation. *See Caln Nether Co., L.P.*, 840 A.2d at 491. Applicant's proposal is simply to classify its leasing office, which is a portion of its apartment building use, as an office use. Applicant's proposed leasing office is, however, such an integral part of its proposed apartment building use that Applicant will maintain the leasing office at least until the apartment units are fully occupied. Applicant's counsel also aptly referred to the leasing office as "an accessory business office." R.R. at 209a. Thus, we further conclude the Board did not err in determining the Application did not set forth a separate office or retail use for 20% of the first-floor street frontage, in violation of Section 27-1302(2)(A)(1) of the Ordinance.

Because we have concluded the Board did not err in determining Applicant failed to show it met the Ordinance's specific, objective criteria for an apartment

10

building conditional use in the TC District, Applicant cannot prevail. In addition, the burden of persuasion did not shift to Objectors to prove "the proposed use has a detrimental effect on the public health, safety, and welfare." *In re Thompson*, 896 A.2d at 670 (citation omitted). Accordingly, we need not consider Applicant's additional issues on appeal.

### IV. Conclusion

For the reasons set forth above, we affirm Common Pleas' September 6, 2024 order, albeit for reasons other than those set forth in Common Pleas' November 12, 2024 Opinion.

_____
STACY WALLACE, Judge

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Appeal of Federation Housing,   :
Inc. from the February 14, 2024   :
Decision of the Board of Supervisors   :
of Lower Southampton Township   :
  : No. 1307 C.D. 2024
Appeal of: Federation Housing, Inc.   :

# **O R D E R**

    **AND NOW**, this 9th day of January 2026, the September 6, 2024 order of the Court of Common Pleas of Bucks County is **AFFIRMED**.

 

_____
STACY WALLACE, Judge