611 A.2d 809

**Robert E. KRATZER and Caroline L. Kratzer, Appellants,**

**v.**

**The BOARD OF SUPERVISORS OF FERMANAGH TOWNSHIP, JUNIATA COUNTY, Pennsylvania, Appellee.**

Commonwealth Court of Pennsylvania.

Argued April 9, 1992.

Decided June 11, 1992.

Randall E. Zimmerman, for appellants.

Andrew L. Winder, for appellee.

Before DOYLE and KELLEY, JJ., and LEDERER, Senior Judge.

DOYLE, Judge.

Robert E. Kratzer and Caroline Kratzer appeal an order of the Court of Common Pleas of Juniata County affirming an order of the Board of Supervisors of Fermanagh Township (Board) which denied the Kratzers' request for a curative amendment to the Fermanagh Township zoning ordinance (Ordinance) pursuant to Section 609.1 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10609.1.[1]

The Kratzers own a parcel of land in the Township located in an "RA" or Rural Agricultural district. They seek to erect two two-family detached dwelling units on this property. The only residential uses permitted in the RA zone, however, are single-family detached dwellings and seasonal residences. Ordinance, Section 502.2.

In order to overcome this obstacle to construction, the Kratzers filed a substantive challenge and request for curative amendment with the Board on September 24, 1990. The

---

1. This Act was reenacted by the Act of December 21, 1988, P.L. 1329.

Kratzers' challenge alleged that the Ordinance, initially adopted on May 5, 1975, was constitutionally infirm in that it failed to provide for all basic forms of housing and was therefore facially exclusionary. Specifically, the Kratzers alleged that Section 604(4) of the MPC, 53 P.S. § 10604(4), provides that two-family dwellings are a basic, distinct and separate form of housing. Section 604 provides, *inter alia,* as follows:

The provisions of zoning ordinances shall be designed:

. . . .

(4) To provide for the use of land within the municipality for residential housing of various dwelling types encompassing all basic forms of housing, *including single-family and two-family dwellings, and a reasonable range of multifamily dwellings in various arrangements* ... provided, however, that no zoning ordinance shall be deemed invalid for the failure to provide for any other specific dwelling type.

The Kratzers pointed out that, while the Ordinance defines both "Two–Family Detached" and "Two–Family Semi–Detached" dwellings, neither of these dwelling types are permitted either as of right or by special exception in any of the zoning districts established by the Ordinance. What is provided for in the zoning ordinance are "multi-family buildings" which are permitted in an R–2 Residential district; but "multi-family buildings" or "multifamily dwellings" are nowhere defined in the Ordinance. Thus, we have a use, not defined in the Ordinance, permitted as a special exception, and a type of dwelling arrangement defined in the Ordinance, but nowhere specifically permitted.

The issue presented before the Board was whether two-family dwellings are included within the term "multi-family buildings." The Kratzers maintain that the term "multi-family buildings" does not include two-family dwellings and therefore, the Ordinance is defective because it fails to provide for two-family dwellings, a basic form of housing.[2] To remedy

2. Because we conclude that two-family uses are provided for in the Ordinance, we do not reach the question of whether Section 604(4) of the MPC mandates two-family uses as a basic form of housing entitled

this alleged defect in the Ordinance, the Kratzers proposed a curative amendment which would allow Two–Family detached and Two–Family semi-detached dwellings as a permitted use in the RA zone where the Kratzers' property is located.

After a hearing on November 28, 1990, the Board rejected the Kratzers' challenge. The Board found that "multi-family buildings," which were permitted in R–2 Residential zones as a special exception, include all dwelling units which house more than one family. Therefore, the Board concluded that two-Family dwellings were permitted as special exceptions within the R–2 districts, and thus, the Ordinance was not facially exclusionary.[3] The Kratzers appealed the Board's order to the trial court which took no additional evidence. The trial court agreed that two-family dwellings were included within the term multi-family buildings and were thus provided for in R–2 Residential districts. This appeal followed.[4]

On appeal to this Court, the Kratzers raise essentially the same issues. First, they contend that the Ordinance is unconstitutional because it does not make any provision for two-family dwellings, that the Ordinance in fact prohibits two-family dwellings, and that the Board's construction of the term multi-family is incorrect. The Kratzers' second argument concerns the Ordinance's provision for multi-family use as a

to constitutional protection under our Supreme Court's decision in *Fernley v. Board of Supervisors of Schuylkill Township,* 509 Pa. 413, 502 A.2d 585 (1985).

3. The Board also found that the Kratzers had failed to meet their burden of showing that the Ordinance was in fact exclusionary or that the Township was refusing to provide for its fair share of basic forms of housing. *See Surrick v. Zoning Hearing Board of the Township of Upper Providence,* 476 Pa. 182, 382 A.2d 105 (1977). In fact, the Kratzers apparently presented no evidence concerning de facto exclusion to the Board. Paragraph 3 of their notice of appeal to the trial court alleges a de facto exclusion; however, before the trial court, they clearly relied on their position that the Ordinance represented a facial or de jure exclusion of two-family dwellings. *See* Transcript of Argument Conference before Court of Common Pleas of Juniata County at 4.

4. Where the trial court has failed to take any additional evidence, our scope of review is limited to a determination of whether the Board has manifestly abused its discretion or committed an error of law. *Cope v. Zoning Hearing Board of South Whitehall Township,* 134 Pa.Commonwealth Ct. 236, 578 A.2d 1002 (1990).

special exception. They maintain that even if two-family dwellings can reasonably be considered as falling under the rubric of multi-family buildings, the Ordinance is still defective because it merely provides for these uses as a special exception rather than as a matter of right. Finally, the Kratzers contend that even if the Ordinance imposes only a partial exclusion of two-family dwellings, under *Fernley*, the Board had the burden to prove that their restriction was a proper exercise of the police power and it failed to present any evidence in this regard.[5] We will address the Kratzers' arguments seriatim.

The Kratzers' first argument is based on the ambiguous nature of the Ordinance. As already stated, Section 302 of the Ordinance defines numerous dwelling types including "Two–Family Detached," and "Two–Family Semi–Detached." An examination of the various zoning districts provided for by the ordinance and the uses permitted therein reveals that neither of these dwelling types are mentioned. The only other reference to Two-family detached dwellings is contained in Section 504.5.b.(4), which details the lot area requirements for the R–2 Residential district. The Kratzers maintain that the failure of the Ordinance to provide expressly for two-family dwellings compels the conclusion that the Ordinance presents a de jure exclusion of two-family dwellings. We disagree.

The Kratzers admit that there is no specific prohibition of two-family dwellings, but they also maintain that *Lower Gwynedd Township v. Provincial Investment Co.*, 39 Pa.Commonwealth Ct. 546, 395 A.2d 1055 (1979), holds that, in terms of exclusionary zoning, there is no material distinction between an ordinance which specifically prohibits a use and one which merely fails to provide for a use. The Kratzers would have us interpret *Lower Gwynedd* to mean that an ordinance which merely omits specific mention of a use is unconstitutional. This interpretation ignores subsequent case law and the

5. We note that the Kratzers raised only the first issue before the Board and the trial court. Therefore, under Pa.R.A.P. 302, these issues are not properly preserved for our review. Because they are somewhat interrelated and in the interests of clarity, however, we will address all of the Kratzers' arguments.

extent of the inquiry engaged in the *Lower Gwynedd* case itself.

■ *Lower Gwynedd* held that an ordinance which fails *entirely* to provide for a needed and desired kind of residential use is exclusionary and as a consequence, unconstitutional. However, we have also stated that the fact that a zoning ordinance does not contain a specific provision addressing a proposed use is not, in and of itself, a basis for finding an unconstitutional exclusion of that use. *Willits Woods Associates v. Zoning Board of Adjustment of the City of Philadelphia*, 138 Pa.Commonwealth Ct. 62, 587 A.2d 827 (1991); *see Appeal of Shore*, 524 Pa. 436, 573 A.2d 1011 (1990). Where an ordinance does not mention a specific use, the inquiry must be carried further to determine whether the proposed use is included within another use that is specifically provided for. This is exactly what was done in *Lower Gwynedd;* after stating that an ordinance which failed to provide for a needed use is exclusionary, we went on to determine whether the proposed use (in that case townhouses) could possibly be included under the ordinance's garden apartment or apartment districts. It is to such an inquiry that we now turn.

■ When a proposed use can be considered within another zoning classification or, where a zoning ordinance is broad enough to encompass the proposed use, there is no de jure exclusion. *Appeal of M.A. Kravitz Co., Inc.*, 501 Pa. 200, 460 A.2d 1075 (1983); *Willits Woods Associates.* While the Ordinance does not specifically provide for two-family dwellings, Section 504.3.d. of the Ordinance does allow the construction of "multi-family buildings" as a special exception in R–2 Residential districts. Although the term "multi-family buildings" is not defined within the Ordinance, we agree with the Board's construction of the term and conclude that two-family dwellings are included and subsumed within the term "multi-family buildings" in this Ordinance.

We are compelled to this conclusion for a number of reasons. First, we note that when interpreting the language of a zoning ordinance, we are required to interpret the language in

favor of the property owner and against any implied restriction where doubt exists as to the intended meaning of the governing body. Section 603.1 of the MPC, 53 P.S. § 10603.1. In addition, in accordance with the dictates of the rules of statutory construction,[6] we are required to interpret an ordinance, if possible, in a manner which will not violate the federal or state constitutions. *See* Section 1922(3) of the Statutory Construction Act of 1972 (Act), 1 Pa.C.S. § 1922(3). Finally, where a term in a zoning ordinance is undefined, the term must be given its usual and ordinary meaning. *Manor Healthcare Corp. v. Lower Moreland Township Zoning Hearing Board*, 139 Pa.Commonwealth Ct. 206, 590 A.2d 65 (1991). Here, in light of the Ordinance itself, we believe that the intent of the governing body is not in doubt, and that it meant to include two-family dwellings within the purview of the term multi-family buildings.

. The fact that the Ordinance defines two-family dwellings indicates that the governing body intended to allow such a use. This reference is obviously not inadvertent as the Ordinance specifically defines not just one, but two types of two-family dwellings.[7] More revealing is the fact that the Ordinance provides set-back and area specifications for two-family detached dwellings in the section of the Ordinance concerning R–2 Residential Districts. It is clearly more than coincidental that the R–2 Residential district is also the one, and only, district which allows multi-family buildings.

Also instructive is the manner in which the Ordinance treats other uses which, under any definition, would clearly be

6. The rules of statutory construction are applicable to statutes and ordinances alike. *Cooley v. East Norriton Township*, 78 Pa.Commonwealth Ct. 11, 466 A.2d 765 (1983).

7. A "Two–Family Detached" dwelling is defined in Section 302 of the Ordinance as:

Two dwelling units accommodating two families which are located one over the other, and having two (2) side yards.

Section 302 of the Ordinance defines "Two–Family Semi–Detached" dwellings as:

Four dwelling units accommodating four families, two units of which are located directly over the other two units. A combination of both the single-family semi-detached and the two family detached structures.

considered multi-family uses. Section 302 of the Ordinance contains definitions of "Garden Apartments" and "Apartment House" under the heading of dwelling types.[8] As with two-family dwellings, however, Garden Apartments and Apartment Houses are not specifically mentioned as permitted uses or as uses permitted by special exception in any district. The only district in which they could possibly be allowed would be the R–2 Residential district which allows multi-family buildings as special exceptions. Thus, the Ordinance provides for two-family dwellings and for apartment dwellings in an identical fashion; neither type of dwelling, with its bifurcated subclasses, is a specific permitted use in any zoning district, yet each would be a permitted use by special exception under the umbrella term "multi-family" dwelling or "multi-family" building in the R–2 district.

It is inconceivable that the governing body of the Township would provide detailed definitions of these several uses and yet fail to provide at least one district in which they could legally exist. Such an interpretation would produce an absurd and unconstitutional result, contrary to the rules of statutory construction, *see Cooley;* Section 1922(1) of the Act, 1 Pa.C.S. § 1922(1). Moreover, construing multi-family buildings to include two-family dwellings gives the term one of its usual and ordinary meanings.[9]

**8.** "Garden Apartments" are defined as:

Three or more dwelling units accommodating three or more families which are located one over the other and which, when more than three units are utilized, are attached side-by-side through the use of common party walls, and which shall have side yards adjacent to each first story end unit. Single-family dwelling units are generally built to a height of three (3) stories, but may conceivably be built to a height of only two (2) stories. Each dwelling unit is accessible by a common stairwell.

An "Apartment House" is defined as:

A structure consisting of a series of single-story dwelling units (two-story units may conceivably be used in certain instances) clustered on a floor about a central elevator shaft or central corridor, each series, consisting of one story, being stacked one upon the other to a specified maximum height.

**9.** The term "multi-family" dwelling is variously defined in dictionaries and case law as meaning either a building housing one or more families

Accordingly, we conclude that the term "multi-family buildings" used in Section 504.3(d) of the Ordinance includes "Two–Family Detached" and "Two–Family Semi–Detached" uses, terms defined in Section 302 of the Ordinance. The Ordinance is not, therefore, facially exclusionary of two-family residential uses.

We now turn to the Kratzers' second argument. The Kratzers maintain that even if two-family uses are permitted as special exceptions, this is not sufficient; the Ordinance must provide for two-family uses as a matter of right to pass constitutional muster.

██ A use allowed by special exception *is* a permitted use. *Kulak v. Zoning Hearing Board of Bristol Township*, 128 Pa.Commonwealth Ct. 457, 563 A.2d 978 (1989). We have held numerous times in the past that an ordinance which allows a use conditionally, as by special exception, is not de jure exclusionary. *See Hersh v. Zoning Hearing Board of Marlborough Township*, 90 Pa.Commonwealth Ct. 15, 493 A.2d 807 (1985); *New Bethlehem Borough Council v. McVay*, 78 Pa.Commonwealth Ct. 167, 467 A.2d 395 (1983) (zoning ordinance satisfies municipality's fair share of required use by making use available by conditional use or special exception); *Zajac v. Zoning Hearing Board of Mifflin Township*, 41

or two or more families. For example, the term "multi" is defined by Webster's Dictionary as

> b: consisting of, containing, or having more than two <*multi*cuspid> <*multi*level> c: consisting of, containing or having more than one <*multi*family>. (Emphasis in original.)

Webster's Third International Dictionary, 1485 (1986). An examination of cases interpreting ordinances using the term "multi-family" dwelling or "multiple" dwelling produces a similar result. *See Fernley* (ordinance prohibits "multiple dwellings" other than "two-family" dwellings); *Miller Appeal*, 66 Pa.Commonwealth Ct. 13, 444 A.2d 786 (1982) (ordinance defined multi-family building as building containing two or more dwelling units); *Fretz v. Hilltown Township Board of Supervisors*, 43 Pa.Commonwealth Ct. 4, 401 A.2d 849 (1979) (ordinance defines "multi-family dwelling" as containing three or more families; normal meaning of "multiple dwelling" however includes "twin homes").

Because there appears to be no single usual and ordinary definition of the term "multi-family," we choose the definition which comports with the intent of the Governing Body, as we divine it, in drafting the Ordinance and which also produces a constitutional result.

Pa.Commonwealth Ct. 7, 398 A.2d 244 (1979). The Kratzers suggest no reason why these precedents should be ignored now, and we decline to do so.

Finally, the Kratzers contend that even if the Ordinance is not facially exclusionary, it does work a partial exclusion, and the Township failed to prove that this exclusion is a proper exercise of the police power. Thus, they maintain that the Ordinance is unconstitutional. This argument is based on our Supreme Court's decision in *Fernley*, which the Kratzers interpret as standing "for the proposition that if a zoning ordinance is found to partially exclude a certain use, then it is incumbent on the Township to prove that this restriction on the use of land is a proper exercise of the police power." Appellants Brief at 11.

■ This, of course, is a misreading of *Fernley* which merely reiterated prior case law where the burden of proof in an exclusionary zoning case is concerned. *Fernley* held that the party challenging an ordinance has the burden of proving that the ordinance is constitutionally invalid. 509 Pa. at 418, 502 A.2d at 587. The burden of proof shifts to the municipality only when the challenger has shown a total prohibition of a legitimate use. *Id.*

Therefore, the burden of proof in the instant case was properly on the Kratzers. In order to meet their burden of showing a partial or de facto exclusion, the Kratzers. were required to introduce evidence showing that the provision for two-family dwellings in the Ordinance does not reasonably accommodate the immediate and projected demand for that use. *See Surrick.* The Kratzers failed to present any evidence on this issue, and thus, did not meet their burden.

Accordingly, the order of the trial court is affirmed.

## ORDER

NOW, June 11, 1992, the order of the Court of Common Pleas of Juniata County in the above-captioned matter is affirmed.