# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hatboro Borough, : 
          Appellant : 
           : 
        v. : No. 703 C.D. 2019
           : Argued: June 8, 2020
Buckingham Retail Properties, LLC : 

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE ANNE E. COVEY, Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**                **FILED: November 9, 2020**

Hatboro Borough (Borough) appeals from a May 2, 2019 Order of the Court of Common Pleas of Montgomery County (common pleas) that found the Borough's Zoning Ordinance[1] (Ordinance) unconstitutionally excluded convenience stores that dispensed fuel from anywhere in the Borough. The Order also provided that Buckingham Retail Properties, LLC (Applicant) was entitled to site-specific relief to develop its proposed Wawa within the Borough.[2] The Zoning Hearing Board of Hatboro Borough (Board) previously denied Applicant zoning relief, including Applicant's substantive challenges to the Ordinance. Because the Board's

---

[1] Borough of Hatboro Zoning Ordinance of 1985, *as amended*, §§ 27-101 – 27-2606.

[2] The Order required Applicant to submit an application that complied with the applicable ordinances in effect at the time of the original application. It otherwise denied Applicant's appeal related to variances that had been requested and denied. Applicant has not cross-appealed from the Order. Therefore, discussion of the variances has been omitted to the extent possible.

characterization of the proposed convenience store as a form of restaurant was unreasonable and a convenience store with fuel pumps is not otherwise permitted anywhere in the Borough, we agree the Ordinance is exclusionary. Accordingly, we affirm common pleas' Order reversing the Board.

## I. BACKGROUND

### A. Applicant and the Subject Property

The facts are undisputed. Applicant is the equitable owner of three parcels of land located at the intersection of South York Road, also known as Route 263, and Horsham Road in the Borough (collectively, Subject Property). (Board Decision, Findings of Fact (FOF) ¶¶ 4, 6.) Two of the parcels are zoned RC-2 Retail Commercial and have been vacant since 2014 when a nursing home and spa were demolished; the only thing that remains on those parcels are two paved areas. (*Id.* ¶¶ 10, 25, 27-28.) The other parcel is zoned R-1 Residential and currently has a single-family residence thereon. (*Id.* ¶¶ 10, 21.) The plan is to consolidate the three parcels into one. (*Id.* ¶ 11.) There is access to all of the parcels from Horsham Road, as well as from a long driveway from South York Road to the rear of the two parcels in the RC-2 District. (*Id.* ¶ 26.)

The Subject Property is just under two acres in size. (*Id.* ¶ 17.) To the west of the Subject Property is a row of single-family residences. (*Id.* ¶ 33.) To the south of the Subject Property is Borough Hall and behind that is Victorian Village, which has apartments, an insurance agency, "an Italian restaurant[,] a bank, and a pharmacy" therein. (*Id.* ¶ 34.) This area is zoned O-Office. (*Id.*) South of Victorian Village is a YMCA. (*Id.* ¶ 35.) The area across South York Road from the Subject Property is zoned R-2 Residential, where a park is located. (*Id.* ¶ 36.) The area

2

across from the Subject Property on Horsham Road is zoned RC-2 and contains the Old Mill Inn. (*Id.* ¶ 37.) Farther north of the Subject Property is "Technology Learning Center, New Life Cleaners, RPM Cycles, U-Haul, Amy Pizza, [an] automotive service [station], a used car lot[,] and a church." (*Id.* ¶ 38.) South York Road is the main corridor through the Borough, along which "there is office/laboratory space, a pizza restaurant, service bays[,] and other commercial uses." (*Id.* ¶¶ 26, 40.) Along the east side of South York Road is a John Deere dealership, which is catty corner to the Subject Property, as well as "a nail salon, vacant retail office space, an engineer's office[,] and an appliance store." (*Id.* ¶¶ 41-42.) This area is zoned HB Highway Business. (*Id.* ¶¶ 42-43.)

### B. The Proposed Project

Applicant seeks to construct a 5,585-square-foot building on the Subject Property that would be 33 feet high and house a Wawa. (*Id.* ¶¶ 46, 48.) Also proposed are 6 fuel dispensing units with access on both sides, providing for 12 total fueling positions. (*Id.* ¶ 49.) A 56.2-foot by 96-foot A-frame canopy would be erected over the pumps, which, at its peak, would measure 20 feet, 8 inches high. (*Id.* ¶¶ 51-53.) In addition, 3 underground storage tanks would be installed in an area measuring 42 feet by 46 feet, or 1,932 square feet. (*Id.* ¶¶ 56, 58.) Fifty parking spaces are also proposed. (*Id.* ¶ 66.) Some parking, a masonry dumpster enclosure, a shed, and possibly a light pole and bollard are the only items that would be located on the parcel in the R-1 District. (*Id.* ¶¶ 68, 75-77, 82.)

On March 7, 2017, Applicant submitted an application seeking five variances needed in order to proceed with the proposed plan. (*Id.* ¶ 2; Supplemental Record (Suppl. R.), Ex. A-1.) On May 10, 2017, Applicant filed an amended application,

withdrawing its request for three variances and asserting substantive validity challenges to the Ordinance based on *de jure* and/or *de facto* exclusion of retail stores that also sell fuel.[3] (FOF ¶¶ 2-3; Suppl. R., Ex. A-2.) In the alternative, Applicant sought variances "[t]o permit improvements associated with a retail store use in the R-1 zoning district, and to permit an accessory use, motor vehicle fuel sales, not to be located at or above the second-story level" or "[t]o permit a retail store with motor vehicle fuel sales in the RC-2 and R-1 zoning districts."[4] (Suppl. R., Ex. A-2 at 2.)

### C. Board Proceedings

Over the course of the next year, 11 public hearings were held, at which Applicant, the Borough, and several nearby residents who were granted party status participated. (Board Decision at 1-2.) Eight witnesses testified for Applicant, including: representatives of Applicant; a real estate project manager for Wawa; and experts in landscape architecture and zoning and land development, community planning and zoning, traffic engineering, planning and design, professional land surveying, and hydrogeology, remediation, and storm water management. The Borough presented three witnesses: an expert in geology and environmental planning; an expert in land planning and zoning; and its own zoning officer.

Based upon the evidence presented, the Board issued a two-page Decision and Order on August 29, 2018, denying all of the requested relief. On September 18, 2018, the Board issued a 55-page Decision and Order setting forth 297 findings of fact, 9 conclusions of law, and its reasoning behind the Decision. In making its

---

[3] Because the sole issue before the Court is whether common pleas erred in concluding the Ordinance was *de jure* exclusionary, we do not address whether the Ordinance was *de facto* exclusionary.

[4] Applicant also sought in the amended application a variance related to landscaping.

4

determination, the Board credited the testimony of Borough's witnesses and discredited the testimony of Applicant's witnesses. Relevant to the *de jure* exclusion, the Board found as follows. "Fuel sales are not permitted as a principal use in the RC-2" District; therefore, Applicant had to show the fuel sales are secondary or subordinate to the Wawa. (FOF ¶¶ 210-11.) The Board did not credit the testimony of Applicant's witnesses that fuel sales are an accessory use to the Wawa because transactions inside the Wawa outnumber transactions at the pumps by a three-to-one ratio. (*Id.* ¶¶ 215-17, 225.) The Board explained that no supporting data was provided to support this testimony, nor did Applicant explain if the figure included individuals who purchased both fuel and food. (*Id.* ¶¶ 218-19.) The Board also found that because the witness from Wawa refused to discuss sales figures, there was no evidence of how sales inside the store compared to sales at the pumps. (*Id.* ¶¶ 220-21.) The Board further found that based upon the amount of projected fuel sales, the Board did not consider the proposed sale of fuel a secondary, subordinate, or accessory use, but the fuel sales were "a separate and distinct principal use." (*Id.* ¶¶ 229-30, 232.) According to the Board, the Ordinance does not limit the number of principal uses permitted per lot. (*Id.* ¶¶ 233, 240.) While motor vehicle fuel sales are not permitted as a principal use in the RC-2 District, the Board found fuel sales are permitted in the HB District, which allows for gasoline service stations. (*Id.* ¶¶ 234-35, 238.) Using a dictionary definition of "service station," the Board found the proposed sale of motor vehicle fuels fits within the definition and, thus, was permitted. (*Id.* ¶¶ 237-38.)

Turning to the convenience store portion of the proposed project, the Board found that food sales are a major component of a Wawa, citing the testimony of one of Applicant's witnesses that sale of food and beverages comprise more than 50%

5

of Wawa's revenue and about Wawa's planned expansion into online ordering and delivery through Grub Hub, Wawa's plan to hire supervisors and managers to oversee its food and beverage operations, and Wawa's emphasis on customization of food orders. (*Id.* ¶¶ 257-61.) The Board also stated Wawa's chief executive officer (CEO) was quoted in an article as describing Wawa's growth "from a traditional convenience store" into "a hybrid convenience store/to-go restaurant" and that Wawa's website advertises food and beverages and promotes mobile ordering of food. (*Id.* ¶¶ 255, 280-81.)

The Board also summarized the testimony of the Borough's zoning expert, whom the Board found credible. The Borough's zoning expert testified that Wawas generally feature a large kitchen in the center of the back wall for preparing foods. (*Id.* ¶ 275.) According to the Borough's zoning expert, only four feet of the store is dedicated to nonpackaged or prepared foods and another three or four feet is devoted to "motor oil, antifreeze, and the like." (*Id.*) The Borough's zoning expert opined that convenience stores sell necessities for daily living, such as paper products, condiments, pet supplies, etc., and Wawa does not sell that. (*Id.* ¶¶ 275, 278.) In his opinion, people go to convenience stores when they do not want to go to a supermarket. (*Id.* ¶ 279.) The opinion of the Borough's zoning expert was that the proposed Wawa was "a restaurant selling packaged and prepared take-out food." (*Id.* ¶ 282.)

The Board found that restaurants were permitted in the RC-2 District provided there is indoor seating, but drive-in or drive-through restaurants were not permitted in the RC-2 District. (*Id.* ¶¶ 262, 264.) According to the Board, drive-in or drive-through restaurants **are** permitted in the HB District and indoor seating is not required. (*Id.* ¶¶ 263-64.) The Board noted that the terms "restaurant," "drive-in

6

restaurant," and "drive-thr[ough] restaurant" are not defined by the Ordinance, so it looked to the dictionary for guidance in defining "restaurant" as "a business establishment where meals or refreshments may be purchased." (*Id.* ¶¶ 265-66 (quoting Merriam-Webster's Dictionary, Suppl. R. Ex. B-8).) The Borough's zoning expert testified that a take-out restaurant would be of the same general character as a drive-in or drive-through restaurant and, therefore, would be permitted in the HB District as a special exception. (FOF ¶ 272.) The Borough's zoning officer concurred that the proposed use would be permitted in the HB District as either "a service to the traveling public . . . or as a gasoline service station and drive-in restaurant." (*Id.* ¶ 285.)

Because the proposed uses were permitted in the HB District, the Board found that Applicant failed to satisfy its burden of demonstrating the Ordinance was *de jure* exclusionary. (*Id.* ¶ 287.) In further support of this finding, the Board found other similar uses exist within the Borough. For instance, in 1982, the Board permitted a convenience store, specifically a 7-Eleven, by special exception in the HB District. (*Id.* ¶¶ 243-44.) The approval provided the applicant would not sell fuel, but it is unknown whether the convenience store even requested permission to sell fuel or whether it agreed to not do so. (*Id.* ¶ 248; Suppl. R. Ex. A-3, Tab 17.) In 1984, Mobil Oil Company obtained variances for relief from floor area and sign requirements for its establishment in the HB District, which is now the site of Lukoil. (FOF ¶¶ 249-50.) One of the findings of fact in that decision stated the applicant wanted to continue the existing lawful nonconforming snack shop use at the new gasoline service station. (*Id.* ¶ 251; Suppl. R. Ex. A-3, Tab 18.) Finally, in 1985, Exxon obtained variances related to signs and to erect a canopy and install a new island for fuel pumps within a setback. (FOF ¶ 253; Suppl. R. Ex. A-3, Tab 19.)

According to one of Applicant's witnesses, the property has a small snack shop, but it is unknown how it was approved. (FOF ¶ 254.)

Based upon the above findings, the Board reasoned that Applicant's proposed uses are permitted in the HB District, and therefore, the Ordinance was not *de jure* exclusionary. The Board likened the proposed fuel sales to a gasoline service station or gasoline filling station, which are permitted in the HB District. (Board Decision at 38-39.) Further, while Applicant characterized the Wawa as a retail store, the Board determined it was "more accurately, a type of restaurant." (*Id.* at 37.) Specifically, the Board determined that "Wawas are take-out restaurants because they feature a large kitchen in the center where customized food is prepared" and because "[t]hey sell packaged and prepared take-out food." (*Id.* at 39.) The Board reasoned that the proposed Wawa was a take-out restaurant that was of the same general character as a drive-in or drive-through restaurant, and that, because drive-in and drive-through restaurants, and uses that are of the same general character thereof, are permitted in the HB District, the proposed use was also permitted in the HB District. (*Id.*) To the extent Applicant's zoning expert testified a Wawa is not a restaurant since it lacks indoor seating, the Board noted the Ordinance does not require indoor seating to be considered a restaurant. (*Id.* at 39-40.) The term "restaurant" is undefined, the Board explained, and the only place indoor seating is mentioned is in reference to restaurants located within the RC-2 Retail Commercial District, which does not apply to drive-in or drive-through restaurants permitted in the HB District. (*Id.* at 40-41.) The Board acknowledged that there are definitions of restaurant that require seating, but others, such as the one it relied upon, do not. (*Id.* at 40.) Because the term was undefined, the Board stated it was within its authority to consult a dictionary for guidance. (*Id.*) After recounting general

8

principles of statutory construction related to zoning ordinances and the declaration of legislative intent for the HB District, the Board stated that "Applicant's proposed use is clearly a highway[-]oriented commercial use . . . and fits within the permitted use of a 'service to the traveling public.'" (*Id.* at 41-42.) In conclusion, the Board stated that "[s]ince [Applicant]'s two primary uses may be developed, as proposed, on a single property within the HB District, [] Applicant's *de jure* challenge must fail." (*Id.* at 42.)

### D. Appeal to Common Pleas

Applicant appealed the Board's Decision to common pleas, asserting, among other things, that the Ordinance was unconstitutional because it excluded Applicant's proposed use from the Borough. Common pleas did not take additional evidence.[5] Upon consideration of the parties' briefs and following oral argument, common pleas issued its Order granting in part and denying in part Applicant's appeal. Common pleas granted the appeal to the extent Applicant asserted a substantive challenge to the Ordinance on the basis of *de jure* exclusion. Common pleas denied Applicant's appeal to the extent it was challenging denial of the variances. Common pleas did not address Applicant's substantive challenge to the Ordinance on the basis the Ordinance was *de facto* exclusionary.

The Borough filed a timely notice of appeal, and common pleas directed it to file a statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Pa.R.A.P. 1925(b) (Statement). In its Statement, the Borough "challenge[d] only that portion of the [] Order that determined that . . . [the]

---

[5] Because common pleas took no additional evidence, our review is limited to determining whether the Board "erred as a matter of law or abused its discretion." *Williams Holding Grp., LLC v. Bd. of Supervisors of W. Hanover Twp.*, 101 A.3d 1202, 1211 n.8 (Pa. Cmwlth. 2014).

[O]rdinance is *de jure* exclusionary, and has unconstitutionally excluded a legitimate land use." (Statement at 1.) The Statement further provided that "[c]orrespondingly, [the Borough was] challeng[ing] that App[licant] [wa]s entitled to site-specific relief permitting App[licant] to develop a convenience store with fuel dispensing facilities and parking on the [Subject P]roperty. . . ." (*Id.*)

In response to the Statement, common pleas issued an opinion explaining its reasoning for its decision (Rule 1925(a) Opinion). In its Rule 1925(a) Opinion, common pleas noted that gasoline fueling stations are not permitted in the zoning districts where the Subject Property is located and are only permitted in the HB District. (Rule 1925(a) Opinion (Op.) at 3.) Although the Ordinance permits drive-in and drive-through restaurants in the HB District, common pleas rejected the assertion that a Wawa convenience store was a drive-in or drive-through restaurant. (*Id.* at 4.) In support of its conclusion, common pleas examined two dictionaries, both of which defined drive-in and drive-through restaurants as ones that provide restaurant service to customers without the need for the customer to leave one's vehicle. (*Id.*) Because there is no takeout window or employee attending to customers remaining in their vehicles, common pleas stated the proposed "Wawa convenience store" was not a drive-in or drive-through restaurant. (*Id.* at 4-5.)

Common pleas observed that the Ordinance also permits uses of the same general character as the delineated uses. As a result, it examined whether the Wawa was a take-out restaurant, as the Borough asserted. Again, common pleas considered how two dictionaries define "restaurant" and concluded that "a restaurant where take-out is available would be a restaurant where meals are prepared and may be eaten on the premise[s], or may be taken and eaten elsewhere." (*Id.* at 5.) Common pleas concluded that "[t]he only similarity in the definition of a 'drive-in' or 'drive-

10

thr[ough]' restaurant and a 'take-out' restaurant is the fact that they are both establishments where food is consumed," and, thus, they are not of the same general character. (*Id.*)

Assuming it did find a take-out restaurant was of the same general character as a drive-in or drive-through restaurant, common pleas concluded a Wawa convenience store nonetheless would not fall within the definition of a restaurant. (*Id.* at 5-6.) Common pleas stated that the ability to purchase and consume food on site was significant to both definitions of restaurant it examined and the proposed Wawa lacks seating or a dining area. (*Id.* at 6.) Therefore, common pleas found that the proposed use did not fit the "restaurant" definition. (*Id.*)

Having concluded a convenience store with a gasoline fueling station was not permitted in the HB District, common pleas next examined whether the proposed use fell within another specifically permitted. Common pleas agreed with Applicant that a convenience store was allowed with an accessory use in the RC-2 District but only if the accessory use is located on the second floor of a structure. (*Id.* at 6.) Because a gasoline fueling station cannot be located on the second floor, common pleas concluded the Ordinance "does not provide for a district that permits both a gasoline fueling station and a convenience store." (*Id.*)

Next, common pleas considered whether the Borough met its burden of showing that the exclusion of a specific legitimate land use was "substantially related to the promotion of public health, safety, and welfare." (*Id.* (quoting *Wimer Realty, LLC v. Township of Wilmington*, 206 A.3d 627, 641 (Pa. Cmwlth. 2019)).) Common pleas determined it could not "find a harmful result or consequence that would ensue from building a gasoline fueling station next to a convenience store," and, as a result, the Borough's Ordinance was *de jure* exclusionary. (*Id.*) Consequently, common

11

pleas stated its award of site-specific relief was appropriate under precedent.  (*Id.* at 7.)

## II.  PARTIES' ARGUMENTS

### A.  The Borough

On appeal, the Borough argues its Ordinance is not *de jure* exclusionary because the proposed Wawa project fits the same general character as other uses permitted in the HB District.  Specifically, the Borough claims the proposed plan is essentially a gasoline filling station and restaurant, which are permitted within the Borough.  The Borough argues that Applicant must overcome the presumption of the Ordinance's validity by showing a total exclusion, which Applicant has not done. The Borough acknowledges that there is no explicit provision allowing for "a retail store with motor vehicle fuel sales," but argues the proposed use is not a "retail store" as Applicant characterizes it, but is more akin to a type of restaurant with a gasoline filling station.  The Borough argues the proposed fuel sales are encompassed by either a gasoline filling station or a gasoline service station, which are permitted in the HB District.  As for the Wawa's non-fuel sales use, the Borough asserts this proposed use is analogous to a take-out restaurant, which is of the same general character as drive-in or drive-through restaurants that are permitted in the HB District.  According to the Borough, the Wawa may sell other items but these other items are incidental to food sales.  The Borough argues common pleas erred in concluding that indoor seating was required for a use to be considered a restaurant under the Ordinance.  The reference to indoor seating in the Ordinance refers only to restaurants located within the RC-2 District, and does not apply to restaurants in other zoning districts.  The Borough argues that the Ordinance does not limit the

12

number of principal uses per property, and the two proposed uses here – a take-out restaurant and gasoline fueling station – qualify as services to the traveling public and are permitted as special exceptions in the HB District. Therefore, the Borough asserts the Ordinance is not *de jure* exclusionary, and, accordingly, the Borough asks the Court to reverse common pleas' Order.[6]

## B.    Applicant

Applicant responds that the Ordinance excludes retail convenience stores that also sell fuel, such as the one proposed, from all zoning districts. Applicant asserts that while fuel sales are permitted in the HB District, that district does not permit the retail sale of convenience items. It further argues that the proposed Wawa is a convenience store, not a take-out restaurant, as the Board found and the Borough asserts. Applicant argues the Borough's classification of the Wawa as a restaurant "is a transparent and convoluted attempt by the Borough to find any way, regardless of how preposterous, for the proposed use to be permitted within the [] HB District." (Applicant's Brief (Br.) at 9.) According to Applicant, "[n]o reasonable person would consider the proposed retail convenience store to be a take-out restaurant." (*Id.*) Even if it was a take-out restaurant, as found, Applicant argues a take-out restaurant is not of the same general character as a drive-in or drive-through restaurant, both of which are permitted in the HB District. Applicant further argues that while the Ordinance provides for sale of certain items in the HB District, such as the sale of vehicles, boats, trailers, heavy equipment or farm implements, building supplies, monuments, and plants, none of these are of the same general character as the items usually sold at a convenience store. Because the Ordinance totally

---

[6] The Board joins in the Borough's brief.

13

excludes retail convenience stores with fuel sales from anywhere within the Borough, Applicant requests the Court to affirm common pleas' Order.

## III. DISCUSSION

### A. General Legal Principles

Generally, a municipality's zoning ordinance is entitled to a presumption that it is constitutionally valid. *Interstate Outdoor Advert., L.P. v. Zoning Hearing Bd. of Warrington Twp.*, 39 A.3d 1019, 1024 (Pa. Cmwlth. 2012). To overcome this presumption, the party challenging the ordinance bears a heavy burden to show the ordinance completely or effectively excludes an otherwise legitimate use. *Id.* There are two ways a challenger can do this: (1) by showing the ordinance is *de jure* exclusionary; or (2) by showing the ordinance is *de facto* exclusionary. A *de jure* exclusion exists if the ordinance, on its face, totally excludes a use. *Township of Exeter v. Zoning Hearing Bd. of Exeter Twp.*, 962 A.2d 653, 659 (Pa. 2009). In contrast, a *de facto* exclusion exists if, when applied, the ordinance effectively acts to prohibit a use that is otherwise permitted. *Id.*

The mere fact that an ordinance does not specifically address a use does not necessarily mean the ordinance is exclusionary. *Caln Nether Co., L.P. v. Bd. of Supervisors of Thornbury Twp.*, 840 A.2d 484, 491 (Pa. Cmwlth. 2004). Rather, we must consider "whether a reasonable interpretation of the ordinance reveals another zoning classification in which the particular use may be allowed." *Ficco v. Bd. of Supervisors of Hempfield Twp.*, 677 A.2d 897, 900 (Pa. Cmwlth. 1996). "When a proposed use can be considered within another zoning classification or, where the zoning ordinance is broad enough to encompass the proposed use, there is no *de jure* exclusion." *Caln Nether*, 840 A.2d at 491. In addition, if an ordinance conditionally

14

permits a use as a special exception, it is not *de jure* exclusionary. *Kratzer v. Bd. of Supervisors of Fermanagh Twp., Juniata Cty.*, 611 A.2d 809, 814 (Pa. Cmwlth. 1992). "The issue of whether a proposed use falls within a given category of permitted use in a zoning ordinance is a question of law, subject to this Court's review." *Caln Nether*, 840 A.2d at 491.

In examining whether a proposed use is covered by an ordinance, "we are mindful that ordinances are to be construed expansively, affording the landowner the broadest possible use and enjoyment of his or her land." *Atiyeh v. Bd. of Comm'rs of the Twp. of Bethlehem*, 41 A.3d 232, 236 (Pa. Cmwlth. 2012). "In addition, in accordance with the dictates of statutory construction,[] we are required to interpret an ordinance, if possible, in a manner which will not violate the federal or state constitutions." *Kratzer*, 611 A.2d at 813 (footnote omitted). If a term is undefined, consistent with the rules of statutory construction, we should give words their plain meaning and "may consult definitions in statutes, regulations[,] or dictionaries for" guidance. *Caln Nether*, 840 A.2d at 491. A municipality's interpretation of its ordinance is entitled to substantial deference. *Montgomery Crossing Assocs. v. Township of Lower Gwynedd*, 758 A.2d 285, 288 (Pa. Cmwlth. 2000). "Where an ordinance is reasonably susceptible of two conflicting constructions, a court should adopt that interpretation which would uphold the validity of the ordinance." *Ficco*, 677 A.2d at 900-01.

Whether an ordinance is exclusionary is a question of law, reviewable by the Court. *Wimer Realty*, 206 A.3d at 640. Courts examine whether an ordinance is exclusionary using a two-step analysis:

> [F]irst[, we] consider whether the challenging party has overcome the presumed constitutionality of an ordinance by showing it excludes [the proposed use] as a use. If we determine the challenger

15

has done so, we then consider whether the municipality has salvaged the ordinance by presenting evidence to show that the exclusionary regulation bears a substantial relationship to the public health, safety, morality, or welfare.

*Township of Exeter*, 962 A.2d at 661. Only if a challenger rebuts the presumption that the ordinance is valid does the burden shift to the municipality to demonstrate that the exclusion promotes the public health, safety, and welfare. *Atiyeh,* 41 A.3d at 236.

With the above principles in mind, we turn to the Ordinance at issue here.

### B. The Borough's Ordinance

The Borough enacted its Ordinance in 1985, and parts thereof have since been amended. The Borough is zoned into various districts that have different purposes and permit different uses. Relevant here are the R-1 Residential, RC-2 Retail Commercial,[7] and HB Highway Business Districts. As expected, the R-1 District permits single-family detached dwellings.[8] Ordinance § 27-602. Certain other uses, not applicable here, are permitted by special exception. *Id.* Section 27-1202 of the Ordinance governs the RC-2 District and provides in pertinent part:

1. In the RC-2 [] District, a building or structure may be erected, altered, or used, and a lot or premises may be used or occupied, for any of the following uses and no other:

A. Retail sale of dry goods, general merchandise, clothing, food, flowers, beverages, pharmaceuticals, household supplies or

---

[7] The Subject Property is located in the R-1 and RC-2 Districts. The parcels located in the RC-2 District were previously zoned R-4 Residential District. On May 23, 2016, the Borough enacted Ordinance No. 1034 which amended the Borough's official zoning map and rezoned those parcels to the RC-2 District. (Suppl. R. Ex. A-3, Tab 10.)

[8] The Ordinance also permits agriculture in the R-1 District as of right. Ordinance § 27-602.

16

furnishings; sale or repair of jewelry, watches, clocks, optical goods, or musical, professional or scientific instruments.

. . . .

C. Restaurant, tearoom, cafe, taproom, or similar establishment serving food and/or beverage, and having facilities for the indoor seating of their patrons, but without drive-in or drive-through service; nor shall drive-in or drive-through facilities be permitted as an accessory use under Subsection 1[.]M.

. . . .

Ordinance § 27-1202. Subsection 1.M provides "[a]ccessory uses as authorized by the general regulations of this chapter, including dwelling units, shall be located at or above the second-story level and shall not be more than 50% of the total lot area. . . ." Ordinance § 27-1202.1.M. According to the Ordinance, the legislative intent of the RC-2 District is "to establish reasonable standards of performance and promote the desirable benefits which retail commercial uses, professional and business offices, and mid-rise multi-family development will have upon the development and potential development of the Central Business District of the Borough . . . ." Ordinance § 27-1201.

Part 13 of the Ordinance governs the HB District. Its declaration of legislative intent states its purpose is "to establish reasonable standards of performance for the development of highway oriented commercial uses in those locations which provide for superior highway access that is a necessary prerequisite for such uses" and "to provide standards which will ensure that such higher density traffic generating commercial uses will not have a negative impact on any abutting residential neighborhoods in the Borough." Ordinance § 27-1301. The Ordinance provides:

17

1.  In an HB Highway Business District, a building or combination of buildings may be erected, altered, or used, and a lot or premises may be used or occupied for any of the following uses and no other:

> A. Services to the Traveling Public.  Gasoline service stations, drive-in and drive-through restaurants, hotels, motels; provided, that no entrance or exit shall be located within 250 feet of a property used for a school, church, hospital, playfield, playground, park, recreation area, or library.
>
> B. Commercial Recreation.  Bowling alleys, skating rinks, miniature golf course, theaters.
>
> C. Automotive and Allied Sales and Services.  Service stations, repair shops, used car and truck sales, automotive parts and accessories, new car and truck sales, boat and marine sales, trailer sales, heavy equipment and/or farm implement sales, bicycle and motorcycle shops.
>
> D. Miscellaneous Sales.  Heating and plumbing shops, building material sales (including lumberyard), monument sales, nurseries, greenhouses, and garden stores.
>
> E. Any use of the same general character as any of the above permitted uses, when authorized as a special exception by the . . . Board; provided, that such use shall be permitted subject to reasonable restrictions as the . . . Board may determine; and, further provided, that no trade or business shall be permitted which is either hazardous or noxious.
>
> F. Trailer camp and motor home camp.

Ordinance § 27-1302.

The Ordinance does not define the term "gasoline service station," but does define "gasoline filling station" as

> [a]ny area of land, including structures thereon, or any building or part thereof, that is used for the sale of gasoline or other motor vehicle fuel or accessories, and which may or may not include facilities for lubricating, washing or other[]wise servicing motor vehicles but which shall not include painting or body and fender repairs.

18

Ordinance § 27-202. The Ordinance does not define "restaurant," "drive-in restaurant," or "drive-through restaurant."

### C. Analysis

Because common pleas accepted no new evidence, we are reviewing the Board's decision for an error of law or an abuse of discretion. *Williams Holding Grp., LLC v. Bd. of Supervisors of W. Hanover Twp.*, 101 A.3d 1202, 1211 n.8 (Pa. Cmwlth. 2014). An abuse of discretion occurs if the Board's findings are not supported by substantial evidence. *Id.* Therefore, we begin with the Board's interpretation of the Ordinance, which common pleas concluded was in error.

The Board considered Applicant's proposal as two principal uses: a gasoline filling station and a restaurant. Preliminarily, it is important to note that the Borough does not argue that because each proposed use is permitted as a standalone use, its Ordinance is not exclusionary. Rather, the Borough contends that the two uses together are provided for by its Ordinance, and therefore, the Ordinance is not *de jure* exclusionary. Specifically, the Borough contends that a take-out restaurant that also dispenses fuel is permitted in the HB District. Section 27-1302.1.A of the Ordinance permits "[g]asoline service stations" in the HB District. Although the term "gasoline service stations" is not defined by the Ordinance, the term "gasoline filling station" is defined and includes structures that sell gasoline. Ordinance § 27-202. Applicant plans to sell gasoline. Therefore, the Board's interpretation of the Ordinance as encompassing the fuel pumps proposed as part of this project is reasonable. *Ficco*, 677 A.2d at 900.

We must then address whether the Board's separate characterization of the Wawa building, and the services to be provided therein as a take-out restaurant, is

19

reasonable. Because the Ordinance does not define "restaurant" or "take-out restaurant," we must first consider whether the Board's interpretation of the terms is reasonable before considering whether the proposed use itself fits that interpretation. In interpreting the term "restaurant," the Board relied upon Merriam-Webster's Dictionary, which defines "restaurant" as "a business establishment where meals or refreshments may be purchased." (Board Decision at 40.) The Board did not specifically examine the definition of take-out restaurant, but reasoned a Wawa would be a take-out restaurant because it features a large kitchen in the center where food is made to the customer's specifications and taken elsewhere to be consumed. (*Id.* at 39.) The Board also found that packaged and prepared food is sold there as well. (*Id.*) These products are likewise purchased to go. The Board acknowledged other items were sold at the Wawa, but found those items were limited. (*Id.*) In addition, the Board considered that food and beverage sales comprise more than 50% of Wawa's revenues, Wawa employs a manager and supervisor to oversee food and beverages at each store, and Wawa's website emphasizes the importance of Wawa's food service. (*Id.*) In addition, the Board found that Wawa's CEO considers Wawa "a hybrid convenience store/restaurant to go." (*Id.*)

Given the deference provided to a municipality's interpretation of its ordinance, *Montgomery Crossing*, 758 A.2d at 288, and that the Board, in interpreting the Ordinance, is permitted to look at dictionary definitions for guidance, *Caln Nether*, 840 A.2d at 491, we cannot conclude the Board erred in interpreting the term "restaurant" or "take-out restaurant" as it did. Although Applicant advocated for a different definition of "restaurant" that requires seating, and common pleas found that indoor seating was a requirement for all restaurants, the Board was not obligated to accept these interpretations. Moreover, common

20

pleas' imposition of indoor seating as a condition for **all** restaurants was in error. The only reference to indoor seating in the Ordinance is in Section 27-1202, which permits restaurants in the RC-2 District. As mentioned above, "restaurant" is not universally defined by the Ordinance, and Section 27-1202 does not apply in the HB District. Therefore, that a restaurant in the RC-2 District must have seating does not mean that every other district also requires restaurants to have indoor seating. In short, the Board's interpretation of the terms "restaurant" and "take-out restaurant," although broad, is reasonable.

We must now decide whether it was reasonable for the Board to conclude that the proposed Wawa is a take-out restaurant. Whether a proposed use falls within a given category of permitted use in a zoning ordinance is a question of law. *Caln Nether*, 840 A.2d at 491. Although a zoning board's interpretation is entitled to deference, its interpretation must still be reasonable. *Ficco*, 677 A.2d at 900. We have examined the reasonableness of a municipality's or zoning board's interpretation in substantive validity challenges before. In *Caln Nether*, for instance, the applicant was proposing a new and used car dealership, which the municipality determined would be permitted as a retail store, a term undefined by the ordinance. 840 A.2d at 491. The trial court agreed, concluding "that the principal function of a car dealership is the sale of automobiles at retail." *Id.* at 492 (citation omitted). We affirmed stating "that a car dealership falls within the plain meaning of the term 'retail store.'" *Id.* Likewise, in *Kratzer*, we determined that a municipality's interpretation that the undefined term "multi-family buildings" included the two-family detached dwelling units that were proposed. 611 A.2d at 813. Therefore, the

ordinance was not exclusionary. *Id.* at 814.[9] We reached a similar conclusion in *D.C. Guelich Explosives Company v. Zoning Hearing Board of Mifflin Township, Columbia County*, 523 A.2d 1208 (Pa. Cmwlth. 1987), where the applicant sought zoning relief in the form of a variance or special exception and simultaneously challenged the validity of the ordinance so it could construct a facility to store and distribute explosives. The zoning hearing board denied relief, and the trial court reversed. We subsequently reversed the trial court, noting that "both warehousing and storage are among the enumerated permitted uses in the Industrial Districts," and the proposed use was a warehouse or storage facility. *Id.* at 1210.

While in those cases we found the interpretations of the ordinances were reasonable, we reached the opposite result in *Cracas v. Board of Supervisors of West Pikeland Township*, where we held that "[e]ven the most strained interpretation of" the ordinance would not encompass the proposed uses, and, as a result, the ordinance was facially exclusionary of same. 492 A.2d 798, 801 (Pa. Cmwlth. 1985). There, a group of landowners of properties located in the Conservation-Residence District originally sought a curative amendment that would allow a variety of commercial activities to be conducted from their residences, which was denied. The landowners then challenged the ordinance on the basis it excluded a number of commercial uses standing alone, without regard to any residential use, specifically "[l]andscaping; [s]ale and refinishing of antiques; [g]reen [h]ouses; [m]asonry; [c]arpentry; [r]emodeling; [p]lumbing; [e]lectrical (including motor and electronic repair); [h]ouse [c]leaning and [p]ainting businesses; [w]holesale establishments for the sale and distribution of supplies and general merchandise," including "customary storage

---

[9] *Caln Nether* and *Kratzer* all involved appeals of denials of curative amendments sought from the municipality's governing board, not the denial of a substantive challenge by a zoning hearing board. However, the analysis for *de jure* exclusions is the same.

22

and workyards incidental thereto." *Id.* at 800. The trial court concluded the proposed uses were "offices of painting, plumbing, masonry[,] and general contractors," which were permitted by the ordinance. *Id.* We disagreed. This Court examined the ordinance and found only two districts – the Historical Business District and the Business District – were relevant. The Historical Business District allowed residences and accessory uses, retail stores not exceeding 1,000 square feet, professional offices or studios, and "hotel[s], inn[s], and restaurant[s], theater[s], auditorium[s], assembly hall[s], librar[ies,] or community recreation center[s]." *Id.* at 800-01. The Business District permitted a "[r]etail service shop, or custom shop, such as: bakery, candy, ice cream or similar shop, custom tailoring or millinery shop; clock, watch, or jewelry shop; radio, television[,] or household appliance shop" or a "[p]ersonal service shop such as barber shop, beautician, dry cleaning establishment." *Id.* at 801. Storage was expressly prohibited. Accordingly, we determined the landowners' proposed uses were not permitted. The Court held "[e]ven the most strained interpretation of those provisions would not justify the conclusion that . . . those districts allow[] any of the business uses sought by the landowners' relief requests." *Id.* Further because the township supervisors relied entirely upon the proposed uses being permitted in the township, they did not present any evidence that the exclusion was necessary for the public health, safety, or welfare. *Id.* Thus, we held the ordinance was exclusionary and the township supervisors did not carry their burden justifying the exclusion.

Here, if the Board's conclusion that Wawa is a take-out restaurant is based solely on Wawa's sale of prepared food, we would agree its classification of the proposed project as a take-out restaurant would be reasonable. However, the Board's categorization of the Wawa as a take-out restaurant disregards the other

23

items the proposed Wawa would sell. Thus, the Board's conclusion that the proposed Wawa is a take-out restaurant is more akin to the "strained interpretation" of the ordinance in *Cracas*, 492 A.2d at 801, than the plain meaning interpretations in *Caln Nether*, *Kratzer*, or *D.C. Guelich*. While the Board found there was no "relevant or substantive testimony as to what the proposed Wawa would sell as to non-food items," (FOF ¶ 276), the Board credited the Borough's witness who testified as to the other types of items sold at the existing Wawa in the Borough,[10] (*id.* ¶¶ 277, 289). The Borough's zoning expert testified that a four-foot section of "non-packaged or prepared food[]"is sold at the existing Wawa in the Borough. (*Id.* ¶ 277.) He also testified that there is usually an additional three- or four-foot section where motor oil, antifreeze, or the like is sold. (*Id.*) Applying the Board's own interpretation of "restaurant" as "a business establishment where **meals or refreshments** may be purchased," (FOF ¶ 266 (emphasis added)), and "draw[ing] upon common sense and basic human experience to construe [the] term[]," *Kohl v. New Sewickley Township Zoning Hearing Board*, 108 A.3d 961, 969 (Pa. Cmwlth. 2015), one cannot conclude that the sale of these items are the type generally associated with a restaurant. Although small in comparison to the projected food sales, the sale of these other items adds a retail component the Board did not consider. We agree with Applicant that when the sale of these other items is taken into consideration, "[n]o reasonable person would consider the proposed [Wawa] to be a take-out restaurant." (Applicant's Br. at 9.)

The Board purported to rely upon a plain language definition of restaurant to conclude the proposed Wawa was a take-out restaurant but without regard to the other types of items the Wawa would sell. Therefore, "[e]ven the most strained

---

[10] The existing Wawa is considered a smaller legacy store and does not sell fuel. If the new Wawa is constructed, the existing Wawa would be closed.

24

interpretation of [the Ordinance] would not justify th[is] conclusion." *Cracas*, 492 A.2d at 801. Thus, we must find the Board erred in classifying the proposed Wawa as a take-out restaurant because it did not consider the retail sales component of other items besides prepared food.

We must therefore determine whether there is any district in which retail sales of food and non-food items is permitted, in addition to fuel sales. The Board suggests other sites exist within the Borough where retail items and fuel sales are permitted to be sold. For support, they cite to zoning approvals from the early 1980s. (FOF ¶¶ 242-54.) To the extent such uses exist, we do not find this argument persuasive, as the Ordinance at issue was not enacted until 1985. There is no evidence as to what uses any prior ordinance permitted. Therefore, these sites may operate as preexisting conforming uses.

Examining the Ordinance, the only other feasible location is the RC-2 District. Pursuant to Section 27-1202, the retail sale of general merchandise and food is permitted in the RC-2 District. However, it does not provide for the sale of fuel, unless such a use would be considered an accessory use, which the Board determined was not the case. Even if the sale of fuel was considered an accessory use, under the Ordinance, Applicant still could not locate the proposed Wawa in the RC-2 District because, pursuant to subsection 1.M, "[a]ccessory uses as authorized by the general regulations of this chapter, including dwelling units, shall be located at or above the second-story level and shall not be more than 50% of the total lot area. . . ." Ordinance § 27-1202.1.M. Because it is undisputed that Applicant cannot sell fuel at or above the second-story level, the proposed Wawa is also excluded from the RC-2 District. Accordingly, there is no district within which Applicant can locate its proposed use.

Having concluded Applicant met its burden of showing the Ordinance is exclusionary, we must consider whether the Borough "has salvaged the [O]rdinance by presenting evidence to show that the exclusionary regulation bears a substantial relationship to the public health, safety, morality, or welfare." *Township of Exeter*, 962 A.2d at 661. Similar to the municipality in *Cracas*, the Borough presented no such evidence. *Cracas*, 492 A.2d at 801. Accordingly, we must conclude it did not meet its burden.

## IV. CONCLUSION

Based upon the foregoing, we hold the Ordinance does not provide for a location within the Borough for the proposed Wawa with fuel sales. Accordingly, we affirm common pleas' Order.

_____
**RENÉE COHN JUBELIRER,** Judge

26

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hatboro Borough,                          :
                Appellant           :
                            :
           v.                               :      No. 703 C.D. 2019
                            :
Buckingham Retail Properties, LLC    :

## **O R D E R**

    **NOW**, November 9, 2020, the Order of the Court of Common Pleas of Montgomery County, dated May 2, 2019, is **AFFIRMED.**

 

                                        _____

                                        **RENÉE COHN JUBELIRER,** Judge