IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Dorothy Soland and Daniel Soland | : | CASES CONSOLIDATED |
| | : | |
| v. | : | No. 362 C.D. 2021 |
| | : | |
| Zoning Hearing Board of East | : | |
| Bradford Township | : | |
| | : | |
| v. | : | |
| | : | |
| The Board of Supervisors of | : | |
| East Bradford Township | : | |
| | : | |
| John Marshall and Dara Gans Marshall | : | |
| | : | |
| v. | : | |
| | : | |
| Zoning Hearing Board of | : | |
| East Bradford Township | : | |
| | : | |
| v. | : | |
| | : | |
| The Board of Supervisors of | : | |
| East Bradford Township | : | |
| | : | |
| Appeal of: John Marshall and | : | |
| Dara Gans Marshall | : | |
| | | |
| Dorothy Soland and Daniel Soland | : | |
| | : | |
| v. | : | No. 403 C.D. 2021 |
| | : | Argued: November 15, 2022 |
| Zoning Hearing Board of East Bradford | : | |
| Township, The Board of Supervisors of | : | |
| East Bradford Township, John Marshall | : | |
| and Dara Gans Marshall | : | |
| | : | |
| John Marshall and Dara Gans Marshall | : | |
| | : | |
| v. | : | |
| | : | |
| Zoning Hearing Board of East Bradford | : | |

Township, The Board of Supervisors of  :
East Bradford Township, Dorothy  :
Soland and Daniel Soland  :
  :
Appeal of: Dorothy Soland and  :
Daniel Soland  :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE LORI A. DUMAS, Judge
          HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE DUMAS                                   FILED: March 6, 2023


        John Marshall and Dara Gans Marshall (the Marshalls) appeal from an
order of the Court of Common Pleas of Chester County (trial court), dated February
16, 2021, affirming a decision and order of the Zoning Hearing Board of East
Bradford Township (Board).  Dorothy Soland and Daniel Soland (the Solands)
cross-appeal.  After careful review, we affirm.

## I. BACKGROUND[1]

        The Marshalls own an 11-acre property, designated as a Class I Historic
Resource, at Birmingham Road in East Bradford Township (Township), in an R-2
Residential Zoning District.  *See* E. Bradford, Chester County, Pa. Zoning Ordinance
§ 115-13 (2019).  The intent of an R-2 Residential Zoning District is "to provide for
low-density residential development in areas of the Township which are not
generally characterized by steep slopes or floodplains, but which nevertheless
contain soils conditional for on-lot sewage disposal systems and conservation uses"
and to "encourage continued agricultural, open space and conservation uses; and to

---

[1] The recitation of facts is derived from the Board's decision, which is supported by the record.  *See* Bd. Op., 5/18/20, at 4-6.

2

encourage and promote phased development throughout the Township by permitting low-density residential uses" in the district until other areas of the Township are more fully developed in medium- and high-density residential uses. *See id.*

On August 30, 2019, the Marshalls filed an application with the Board, challenging the validity of the Township Zoning Ordinance on several grounds. The Marshalls alleged: 1) the *de jure* exclusion of wedding barns; 2) the *de jure* exclusion of hotels/motels; and 3) the local noise ordinance was vague, subjective, and impossible of compliance. The Marshalls did not submit plans for any proposed use, nor did they propose a curative amendment to the Zoning Ordinance. Nevertheless, the Marshalls did request site-specific relief for the property. *See* Validity Challenge Application, 8/30/19. Although the Marshalls' original application describes the requested use as "Wedding Barn (including weddings, receptions and other social events and Hotel/Motel)," it later became clear that the intended use was a special events venue with a particular theme, *i.e.*, a barn. *See id.*

The Board held several public hearings; the Solands, who are neighbors of the Marshalls, intervened as interested parties. In relevant part, the Marshalls presented the testimony of David Babbitt, an expert in land planning and zoning, to testify regarding wedding barns. Mr. Babbitt described a wedding barn as "a venue where weddings are held in a current or former barn specifically where people who are looking for a particular flavor or character of a wedding that might be more bucolic and less rigidly formal." Notes of Testimony (N.T.), 12/4/19, at 50. Mr. Babbitt stated that "the written challenge" referenced a "wedding barn" but "it's about a wedding barn or a special event usage as a principal use of a property." *Id.* at 45-46. The Marshalls did not provide any other evidence defining a wedding barn in terms of a zoning use.

3

The Board issued a written decision on May 18, 2020, granting the challenge as to hotel and motel uses only.[2] The Board denied all other requests. Specifically, regarding the wedding barn challenge, the Board determined that the Marshalls must demonstrate that the Zoning Ordinance totally excluded a legitimate use, and five other uses permitted by the Zoning Ordinance encompassed the proposed use.[3]

The Marshalls appealed the Board's decision to the trial court, and the Solands and Township intervened. The Solands also filed an appeal from the Board's decision, and the Marshalls and Township intervened. By agreement, the trial court consolidated both appeals. On October 20, 2020, the trial court granted the Marshalls' motion to include Resolution No. 13-2020 in the record. The resolution had been adopted by the Township on June 9, 2020, and declared the

---

[2] The Board, in its recommendations, concluded that hotel use was appropriate in the Township's C-2 Commercial District, noting the infrastructure available in that district, including the major arterial road Downingtown Pike, and accessible public water and sewer service. Bd. Op. at 20. The Board also concluded that, as a result, the Marshalls' property was not suitable for hotel use because it was located in a residential area, accessible by local road only. *Id.* Further, the Board noted the lack of a public sewer available for hotel use. *Id.*

[3] First, the Zoning Ordinance defines an eating and drinking establishment in the C-2 and C-3 Zoning Districts as "a restaurant or similar establishment offering service to the public, which provides for the sale and consumption of food and beverages and which contains inside seating facilities." *See* E. Bradford, Chester County, Pa., Zoning Ordinance § 115-6 (2019). Second, religious use facilities, allowed in the C-2, R-3, and R-4 Zoning Districts, constitute "[u]se of land or a building or buildings as and for a convent, monastery, church or similar institution, including rectory or parish house, not for profit and by an organization organized solely or primarily as a religious institution . . . ." *See id.* Third, restaurants, are allowed as part of an adaptive reuse under Section 115-131.3, defined a restaurant in this context as "provided that all food and drink shall be prepared, served and consumed within the building." *See* E. Bradford, Chester County, Pa., Zoning Ordinance § 115-131.3 (2019). Fourth, at a bed and breakfast estate, the Zoning Ordinance specifies "bed-and-breakfast facilities and bed-and-breakfast estates, subject to all the supplemental provisions of the Zoning Chapter." *See id.* Fifth, at a planned university zoning district, allowed under Section 115-146(J), the use regulations for this district allow for special events and programs by persons who are neither students nor employed by the university. *See* E. Bradford, Chester County, Pa., Zoning Ordinance § 115-146(J) (2019).

4

Zoning Ordinance's exclusion of hotel and motel uses invalid. The Township intended to proceed with a curative amendment.

On February 16, 2021, the trial court affirmed the Board's decision in both appeals. The trial court concluded that a wedding barn is not a separate zoning use, and that the Zoning Ordinance provides for special events venue use in four zoning districts. Trial Ct. Op., 2/16/21, at 6-12. Rather, a wedding barn is a theme of wedding, and the Township is not required to provide for every business model in its Ordinance. *See id.* The trial court also determined that the Marshalls' challenge to the noise ordinance was not ripe. *See id.* at 14-15. The trial court rejected the Solands' assertion that hotel/motel use is not an accessory to eating and drinking establishment use. *See id.* at 18.

Both the Marshalls and the Solands timely appealed to this Court.

## II. ISSUES

### A. The Marshalls' Appeal

### 1. Whether there is a *de jure* exclusion of special event venues

The Marshalls raise three issues on appeal. First, they contend that the Board erred as a matter of law in concluding that the Zoning Ordinance did not exclude *de jure* the use of a special event venue as a discrete use. Marshalls' Br. at 16. According to the Marshalls, the Zoning Ordinance does not specifically provide for this use, and other specified categories do not encompass the special events/banquet venue use. *Id.* Further, the Marshalls assert, even if a special events use would be permitted as an accessory use,[4] such accessory use would be insufficient or unacceptable. *Id.* at 16-17. For example, the Marshalls posit, the

---

[4] The Zoning Ordinance defines "accessory use" as "[a] use subordinate to the principal use of land or of a building on a lot and customarily incidental thereto." *See* E. Bradford, Chester County, Pa., Zoning Ordinance § 115-6(A) (2019).

Zoning Ordinance requires that an eating and drinking establishment serve food and beverages to the public, which they do not wish to do in their event space. *Id.* The Marshalls also argue that the Township and the Solands failed to present any evidence that the exclusion would impact the health, safety, and welfare of the citizens.[5]

In response, the Township argues that the Marshalls did not meet their burden to establish that the Zoning Ordinance is exclusionary because a wedding barn is a theme of special event venue and not a discrete use, and that the use as defined by the Marshalls is reasonably encompassed under a variety of other permitted, allowed uses within the Zoning Ordinance. Twp.'s Br. at 14-17. The Township points to the testimony of Mr. Babbitt in which he conceded that a wedding barn is nothing more than a style of building where a special event may be held. *Id.* at 16.

**2. Whether the Board erred in noting defects in the Marshalls' property**

Second, the Marshalls contend that the Board should not have considered whether their property was suitable for use as a hotel. Marshalls' Br. at 33-36. According to the Marshalls, their application merely challenged the Zoning Ordinance's exclusion of hotels as a permitted use; it did not include or require a plan seeking site-specific relief or supporting evidence. *Id.* at 34. Accordingly, they argue that issues relating to the suitability of their property for hotel use were never before the Board, nor were they given an opportunity to litigate those issues. *Id.* at 35. Rather, the Marshalls suggest, the Board wrongly preempted the Marshalls from

---

[5] We need not reach this argument if the Marshalls have not established that the Zoning Ordinance totally excludes a proposed use. *Beaver Gasoline Co. v. Osborne Borough*, 285 A.2d 501, 503 (Pa. Cmwlth. 1971).

seeking site-specific relief in the future. *Id.* The Marshalls cite no case law or other authority in support of this argument.

The Township responds that this issue is not properly subject to appeal by the Marshalls due to their failure to object at the hearing, but nevertheless rejects their claim. Twp.'s Br. at 35. According to the Township, Section 916.1(c)(5)[6] of the Pennsylvania Municipalities Planning Code (MPC) requires the Board to formulate recommendations to cure defects recognized in its Ordinance. *Id.* Therefore, because the Board found the Ordinance to exclude hotel/motel uses, and because the Marshalls did not provide any evidence, plans, or recommendations to cure the alleged defect, the Board did not err in "taking the next step to provide its recommendations." *Id.* at 36. The Township recognizes that in this case, the Marshalls had not yet made a formal request for relief and no formal denial had been issued. *Id.* However, in light of other applications submitted by the Marshalls, as well as their original validity challenge application, the Board merely advised the Marshalls that their property was likely ill-suited for use as a hotel. *Id.*

### 3. Whether the noise ordinance is facially vague

In their third issue, the Marshalls assert that the Zoning Ordinance, which prohibits "physical vibration or noise perceptible at or beyond the lot boundaries," is entirely vague, subjective, bereft of any objective standards and places a property owner at the mercy of the Township. Marshalls' Br. at 36-37. According to the Marshalls, virtually any use involves some level of noise, and for the Township to cite a property owner for a noise violation in this instance would be

---

[6] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 12, 1988, P.L. 1329, 53 P.S. § 10916.1(c)(5).

"a clear example of government overreach serving no legitimate purpose." *Id.* at 37.[7]

The Township responds that the challenge to the noise ordinance is not justiciable. According to the Township, outside the First Amendment[8] context, a challenger has no standing to raise a facial vagueness challenge to a local ordinance unless or until charged with its violation. Twp.'s Br. at 29 (citing *Commonwealth v. Heinbaugh*, 354 A.2d 244, 245 (Pa. 1976)). The Township notes that the Marshalls did not raise First Amendment issues and did not introduce evidence that the Zoning Ordinance had been enforced against their property or any other property in the Township. *Id.* at 29-30. Further, according to the Township, the Marshalls did not allege any particular conduct that had implicated the Zoning Ordinance. Thus, the Township concludes, the Marshalls' claim is not ripe for adjudication.

## B. The Solands' Cross-Appeal

In their cross-appeal, the Solands contend that hotels/motels are not excluded *de jure* under the Zoning Ordinance. Solands' Br. at 15. Although the Zoning Ordinance states that "hotels and motels are not permitted in any zoning district," the Solands observe that it permits a "multifamily" dwelling unit structure in the R-4 District. *Id.* Because there is no length of stay requirement for these structures, the Solands suggest that this is equivalent to hotel usage. *Id.*

The Solands also contend that "eating and drinking establishments" are permitted in the C-2 District with accessory uses that include hotel/motel use. *Id.* at 28-33. In support of this assertion, they cite case law pointing to obscure accessory

---

[7] The Marshalls also reference a separate application for a conditional use of their property. According to the Marshalls, the Township denied the application in part because it failed to comply with this noise provision, but the Marshalls admit they did not raise this issue at the hearing. *See* Marshalls' Br. at 39.

[8] *See* U.S. Const. amend. I.

8

uses deemed appropriate in other contexts.[9] Solands' Br. at 29 (citing, *e.g.*, *Southco, Inc. & Contact II, Inc. v. Concord Twp.*, 713 A.2d 607 (Pa. 1998) (off-track betting use was permitted as an accessory to an eating and drinking establishment despite the fact that it was the property's dominant source of income)).

The Township has not filed a brief addressing the Solands' arguments on appeal. However, the Marshalls filed a reply brief addressing the Solands' issue. They agree with the trial court that a plain-meaning interpretation of the Zoning Ordinance does not support the interpretation that a "multifamily unit" as provided for in the R-4 District encompasses a hotel. Marshalls' Reply Br. at 5.

### III. ANALYSIS[10]

### A. There is No *De Jure* Exclusion of Special Event Venues

The Marshalls argue that the Zoning Ordinance *de jure* excludes wedding barn use. A zoning ordinance is presumed valid, and a challenger has a heavy burden to establish its invalidity; generally, this is done on "substantive due process grounds, *i.e.*, whether an ordinance is substantially related to a legitimate interest." *Protect PT v. Penn Twp. Zoning Hearing Bd.*, 220 A.3d 1174, 1183 (Pa. Cmwlth. 2019) (citation omitted). In cases of exclusionary zoning, the challenger "bears the burden of showing that the zoning ordinance completely or effectively excludes a legitimate use." *In re Charlestown Outdoor, LLC*, 280 A.3d 948, 958

---

[9] The Solands also identify several restaurants and inns in various Pennsylvania counties which they characterize as "primary eating and drinking uses with accessory lodging," but do not cite to any legal authority or evidence in the record regarding these establishments, the zoning ordinances for the townships in which they are located, or any evidence regarding the actual primary or accessory uses. Solands' Br. at 29 n.2.

[10] The parties presented no additional evidence to the trial court. Therefore, our review is limited to determining whether the Board committed an abuse of discretion or an error of law. *Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807, 811 n.1 (Pa. Cmwlth. 2005).

9

(Pa. 2022). A zoning ordinance excluding a legitimate use may be unconstitutionally exclusionary. *Id.*

A *de jure* exclusion occurs when "the ordinance on its face totally excludes a use."[11] *Charlestown Outdoor, LLC*, 280 A.3d at 958. The fact that an ordinance does not contain a specific provision addressing a proposed use does not, without more, establish a basis to find an unconstitutional exclusion of that use. *Kratzer v. Bd. of Supervisors of Fermanagh Twp., Juniata Cty.*, 611 A.2d 809, 812 (Pa. Cmwlth. 1992). "When a proposed use can be considered within another zoning classification or, where a zoning ordinance is broad enough to encompass the proposed use, there is no *de jure* exclusion." *Id.* If a challenger meets the burden of proving that the ordinance is exclusionary, "then the burden shifts to the municipality to prove that the exclusion bears a substantial relationship to the public health, safety, morality, or welfare." *Charlestown Outdoor, LLC*, 280 A.3d at 958.

In the instant case, the Zoning Ordinance does not specifically provide for special events venues as a discrete use. Nevertheless, in order to show a *de jure* exclusion, the Marshalls must establish that their proposed use would not fit into another zoning classification. *Kratzer*, 611 A.2d at 812. Both the Board and the trial court agreed that the proposed use could be appropriate in several zoning districts, including eating and drinking establishments, religious use facilities, a restaurant, a bed and breakfast estate, and a planned university zoning district. *See* Bd. Op. at 7, 11-14; Trial Ct. Op. at 7-12. Further, the Board concluded that, based on the definitions provided by the Marshalls' expert witness, a "wedding" was a type

---

[11] By contrast, "[i]n a *de facto* exclusion case, the challenger alleges that an ordinance appears to permit a use, but under such conditions that the use cannot in fact be accomplished." *Twp. of Exeter v. Zoning Hearing Bd. of Exeter Twp.*, 962 A.2d 653, 659 (Pa. 2009).

10

of special event and a "wedding barn" was a theme of wedding rather than a separate zoning use. *See* Bd. Op. at 7.

Both the Board and the trial court rejected the Marshalls' reliance upon *Wimer Realty, LLC v. Township of Wilmington*, 206 A.3d 627 (Pa. Cmwlth. 2019). *See* Bd. Op. at 14; Trial Ct. Op. at 7-10. In *Wimer*, the applicants proposed to use their property as a venue for special events, specifically themed as a "wedding barn." *Wimer*, 206 A.3d at 630. The Wimers' expert testified that the current local ordinance would not permit the use, but the Wimers had submitted a curative amendment to address the deficiency. *Id.* at 631. Ultimately, the trial court found in favor of the Wimers. *Id.* at 631-635.

*Wimer* is distinguishable from the instant case in several respects. First, the township never adopted the position that its ordinance provided for this use, and the township's expert ultimately agreed that the township should amend its ordinance to accommodate special event venues. *Id.* at 641. Further, neither the trial court nor this Court analyzed the ordinance to determine whether the proposed use was excluded, but noted that because both parties' experts agreed that the use of "wedding barn facility, special event venue, or similar facility" was not provided for in the ordinance, the burden shifted to the township to show that the exclusion bore a substantial relationship to public health, safety, morality, or welfare. *See id.* Because the township did not do so, we affirmed the trial court's finding that the zoning ordinance was unconstitutionally exclusionary. *See id.* at 642. Finally, in *Wimer*, this Court did not consider whether permitting special event venues as an accessory use was *de jure* exclusionary. *See id.* at 637.

Instantly, the Board examined each of the five zoning districts which could encompass "special event" venues as an accessory use and determined that

they could be held at eating and drinking establishments, which could be used to conduct all types of special events, including weddings. Similarly, weddings could be held at religious establishments and planned university zoning districts, restaurants, and bed and breakfast estates. The Marshalls' arguments that special events venues must be a principal use and cannot be an accessory use reads more into the language of the ordinances than actually exists. Both the Board and the trial court reiterated that the Township is not required to provide, specifically, for every conceivable business use. *See, e.g.*, *Montgomery Crossing Assocs. v. Twp. of Lower Gwynedd*, 758 A.2d 285 (Pa. Cmwlth. 2000) (observing that a township must provide for all reasonable uses but is not "required to zone for every business model"). Accordingly, the Marshalls did not meet their burden of showing that the Zoning Ordinance unconstitutionally excluded special events venues.[12] The Board did not abuse its discretion or commit an error of law. *Taliaferro*, 873 A.2d at 811 n.1.

## B. Site-Specific Relief

The Marshalls claim that the Board should not have considered their property's suitability for use as a hotel, because issues relating to the suitability of the use were not properly before the Board. Marshalls' Br. at 33-36. In cases where a landowner challenges, on substantive grounds, the validity of a zoning ordinance,

---

[12] To the extent that the Marshalls attempt to raise a *de facto* challenge by arguing that their proposed use is functionally incompatible with allowed uses, they have briefed and cited case law solely relating to *de jure* exclusions and have, accordingly, waived this issue for purposes of appeal. *See* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part . . . the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."); *Commonwealth v. Spotz*, 716 A.2d 580, 585 n.5 (Pa. 1998) (holding that failure to develop issue in appellate brief results in waiver); *Browne v. Department of Transportation*, 843 A.2d 429, 435 (Pa. Cmwlth. 2004) ("At the appellate level, a party's failure to include analysis and relevant authority results in waiver.").

12

Section 916.1 of the MPC provides guidance for both the application and the considerations the Board should undergo following the application. 53 P.S. § 10916.1(a)-(c). The landowner may submit a curative amendment with his request for the Board to consider at a hearing. 53 P.S. § 10916.1(a)(1). The governing body which has determined that a validity challenge has merit "may accept" a landowner's curative amendment *or* may adopt an alternative amendment to cure the challenged defects. 53 P.S. § 10916.1(c) (emphasis added). In adopting a curative defect, the MPC lays out various aspects that the Board should consider along with any curative amendments, plans, and explanatory material submitted by the landowner. *See id.* All of these considerations center around the proposal and the suitability of the land for its intended use, including but not limited to the impact upon roads, sewer facilities, water supplies, natural features of the land, and other new environmental impacts or land uses essential to public health and welfare. *See id.*

In the instant case, the Marshalls challenged the substantive validity of the Zoning Ordinance by contending that hotels and motels were *de jure* excluded by the Ordinance. Further, in their application, they requested site-specific relief. They did not submit and were not required to submit plans or curative amendments on their own. However, it is disingenuous to claim that the Board could not consider the reality of the property when making its recommendations. The MPC is clear regarding the Board's responsibilities: it may adopt an alternative amendment to cure the challenged defects, and in doing so, it must consider the impact of the proposal on the surrounding land. 53 P.S. § 10916.1(c)

Here, the Board determined that the Marshalls' property was located in an R-2 Residential District. *See* Bd. Op. at 2. The R-2 District was created specifically "for low-density residential development in areas of the Township

13

which are not generally characterized by steep slopes or floodplains, but which nevertheless contain soils conditional for on-lot sewage disposal systems and variable groundwater yields . . ." *See* E. Bradford, Chester County, Pa., Zoning Ordinance § 115-13 (2019). Further, Mr. Babbitt, the sole witness at the hearing before the Board, admitted that a hotel/motel is a commercial use, which is inconsistent with the purposes of the R-2 District, particularly where the property lacked public water and sewer. N.T., 12/4/19, at 76-77. On the contrary, the Board concluded that hotel use was appropriate in the Township's C-2 Commercial District, noting the infrastructure available in that district, including the major arterial road Downingtown Pike, and accessible public water and sewer service. Bd. Op. at 20.

The record does not reveal any error by the Board. While remedying the exclusion of hotel/motel use from the Zoning Ordinance, the Board also appropriately concluded that this use may be appropriate in the C-2 Commercial District of the Township but was ill-suited for the R-2 Residential District in which the Marshalls' property is situated. Accordingly, the Board did not abuse its discretion or commit an error of law in noting that the property was not suitable for hotel use. *Taliaferro*, 873 A.2d at 811 n.1.

### C. A Challenge to the Township Noise Ordinance is Premature

The Marshalls assert that the Ordinance prohibiting physical vibrations or noises perceptible at or beyond the lot boundaries is impermissibly vague. Marshalls' Br. at 36-37. A statute is void for vagueness "when it fails to define an offense with sufficient definiteness so that ordinary persons can understand what conduct is prohibited." *Baumgardner Oil Co. v. Com.*, 606 A.2d 617, 623 (Pa. Cmwlth. 1992) (citation omitted). However, in order to bring a challenge to an

14

unconstitutionally vague statute, the challenge must be in a First Amendment context, or the party must have standing to raise such a challenge. *Heinbaugh*, 354 A.2d at 245. To establish standing, a person must show that he is adversely affected and aggrieved by the matter he seeks to challenge. *See Fumo v. City of Philadelphia*, 972 A.2d 487, 496 (Pa. 2009). "An individual can demonstrate that he has been aggrieved if he can establish that he has a substantial, direct and immediate interest in the outcome of the litigation." *See id.* (citation omitted). The interest is "direct if there is a causal connection between the asserted violation and the harm complained of; it is immediate if that causal connection is not remote or speculative." *See id.*

Initially, we note that insofar as the Marshalls argue that the Township denied their application for conditional use in part because they failed to comply with the noise provision, they admit they did not raise the issue before the Board. Marshalls' Br. at 39. Accordingly, they did not preserve the issue for consideration on appeal. *See Kennett Consol. Sch. Dist. v. Chester Cnty. Bd. of Assessment Appeals*, 228 A.3d 29, 42 (Pa. Cmwlth. 2020); Pa.R.A.P. 302(a) (noting that issues not raised in the lower court are waived for purposes of appeal).

Even if we did not find waiver, the Marshalls did not raise First Amendment issues and did not and cannot introduce evidence that the Zoning Ordinance had been applied to or enforced against their property. Therefore, they cannot establish standing, and the Board and trial court appropriately determined that the Marshalls were not entitled to relief on this issue. *Heinbaugh*, 354 A.2d at 245; *see also Taliaferro*, 873 A.2d at 811 n.1.

### D. Solands – *De Jure* Exclusion of Hotel/Motel Use

In their cross-appeal, the Solands contend that the Zoning Ordinance does not *de jure* exclude hotel/motel use. Solands' Br. at 15. Rather, they suggest

that multi-family dwellings permitted in the R-4 Residential District are equivalent to hotel usage. *See id.* When interpreting an ordinance, undefined terms are given their plain meaning. *Caln Nether Co., L.P. v. Bd. of Supervisors of Thornbury Twp.*, 840 A.2d 484, 491 (Pa. Cmwlth. 2004). Any doubts as to the interpretation of an undefined term "must be resolved in favor of the landowner and the least restrictive use of the land." *Tobin v. Radnor Twp. Bd. of Comm'rs*, 597 A.2d 1258, 1264 (Pa. Cmwlth. 1991). In conducting our inquiry, "we may consult definitions found in statutes, regulations or the dictionary for assistance," though these sources are persuasive rather than controlling. *H.E. Rohrer, Inc. v. Zoning Hearing Bd. of Jackson Twp.*, 808 A.2d 1014, 1017 (Pa. Cmwlth. 2002).

In the instant matter, the Ordinance does not define a hotel or motel, so those terms must be interpreted in their plain meaning. The Board decision defined hotel/motel use as "use that provides lodging for profit to guests" and "a commercial establishment letting rooms for short term stays." Bd. Op. at 15. The Solands define this use as "an establishment providing overnight short-term transient lodging stays to guests for profit."

The Zoning Ordinance defines "dwelling unit," "multifamily," "apartment," and "family" as follows. A "dwelling unit" is a "building or entirely self-contained portion thereof containing complete housekeeping facilities for occupancy by only one family." *See* E. Bradford, Chester County, Pa., Zoning Ordinance § 115-6. "Multifamily" means a building "containing three or more dwelling units . . . ." *Id.* An "apartment" is a "building containing three or more dwelling units separated by party walls, which may have more than one dwelling unit from ground to roof and common outside access and hallways." *Id.* A "family" can be either "a single person occupying a dwelling unit," "two or more persons

16

related by blood or marriage occupying a dwelling unit, including not more than two boarders, roomers, or lodgers," or "not more than four unrelated persons occupying a dwelling unit, living together and maintaining a common household." *Id.*

The Zoning Ordinance does not define the length of time a family, boarder, roomer, or lodger may occupy a dwelling unit. The Solands argue that a dwelling unit may be used for short term or transient stays as a hotel because there is not a specific prohibition against such use, contending that the trial court misapplied *Slice of Life v. Hamilton Township Zoning Hearing Board*, 207 A.3d 886 (Pa. 2019). Solands' Br. at 26. According to the Solands, *Slice of Life* involved a zoning ordinance with a significantly different definition of "family" than the ordinance in East Bradford. *Id.* In *Slice of Life*, the ordinance defined family as "a single housekeeping unit," where, as noted above, the East Bradford ordinance has several definitions of family. *Slice of Life*, 207 A.3d at 889; Zoning Ordinance, § 115-6.

The Solands' attempt to distinguish the definition of family in the two ordinances is inapposite. The trial court cited *Slice of Life*, specifically to note that a dwelling used by families is not intended to be used for transient uses or short-term rentals. Trial Ct. Op. at 17. This is true whether, as in *Slice of Life*, family has a narrow definition or, as in East Bradford, a broader definition. The trial court correctly noted the plain language of the statute regarding dwellings implies permanency, not transient use, while the language around hotels and motels implies transience. As the trial court notes, "hotels and motels do not require disclosure of familial relationships prior to occupancy of a room" and "an apartment building or multifamily housing unit is intended for residential use [while] a hotel/motel is intended for commercial use." Trial Ct. Op., 2/16/21, at 17-18. Accordingly, the

17

Board did not abuse its discretion or commit an error of law. *Taliaferro*, 873 A.2d at 811 n.1.

### E. Solands – Hotel/Motel as Accessory Use

Finally, the Solands contend that "eating and drinking establishments" are permitted in the C-2 District with accessory uses that include hotel/motel use. Solands' Br. at 28-33. Regarding this issue, the Solands' argument is simply not persuasive. Rather, as the trial court reasoned, the Ordinance defines an Eating and Drinking Establishment as a "restaurant or similar establishment offering service to the public, which provides for the sale and consumption of food and beverages and which contains inside seating facilities." Trial Ct. Op. at 18 (citing Zoning Ordinance, § 115-6). Accessory use is defined as a "use subordinate to the principal building on a lot and used for purposes customarily incidental to the principal use of the building." *Id.* Common sense reasoning is that "while an eating and drinking establishment may be an accessory use to a hotel/motel, a hotel/motel is not customarily incidental to an eating and drinking establishment." *Id.* Accordingly, the Board correctly determined that a hotel/motel is not an accessory use to an eating and drinking establishment and did not abuse its discretion or commit an error of law when making this determination. *Taliaferro*, 873 A.2d at 811 n.1.

### IV. CONCLUSION

For the foregoing reasons, we affirm the order of the trial court denying the appeals of the Marshalls and the Solands.

_____
LORI A. DUMAS, Judge

Judge Fizzano Cannon did not participate in the decision in this case.

18

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Dorothy Soland and Daniel Soland | : | CASES CONSOLIDATED |
| | : | |
| v. | : | No. 362 C.D. 2021 |
| | : | |
| Zoning Hearing Board of East Bradford Township | : | |
| | : | |
| v. | : | |
| | : | |
| The Board of Supervisors of East Bradford Township | : | |
| | : | |
| John Marshall and Dara Gans Marshall | : | |
| | : | |
| v. | : | |
| | : | |
| Zoning Hearing Board of East Bradford Township | : | |
| | : | |
| v. | : | |
| | : | |
| The Board of Supervisors of East Bradford Township | : | |
| | : | |
| Appeal of: John Marshall and Dara Gans Marshall | : | |
| | : | |
| Dorothy Soland and Daniel Soland | : | |
| | : | |
| v. | : | No. 403 C.D. 2021 |
| | : | |
| Zoning Hearing Board of East Bradford Township, The Board of Supervisors of East Bradford Township, John Marshall and Dara Gans Marshall | : | |
| | : | |
| John Marshall and Dara Gans Marshall | : | |
| | : | |
| v. | : | |
| | : | |
| Zoning Hearing Board of East Bradford | : | |

Township, The Board of Supervisors of : 
East Bradford Township, Dorothy :
Soland and Daniel Soland :
:
Appeal of: Dorothy Soland and :
Daniel Soland :

# **O R D E R**

AND NOW, this 6th day of March, 2023, the trial court's order entered February 16, 2021, is AFFIRMED.

LORI A. DUMAS, Judge